## MARTIN FALER *v.* JAMES A. JORDAN.

1. PARTNERSHIP—POWER OF PARTNERS TO BIND THE FIRM.—M. and F. were partners under the firm name of F. & M., doing business as general merchants. M., as one of the firm, but without the knowledge of his partner, F., borrowed $1,000, and signed the firm name to the promissory note given for the money as sureties, and also that of D., M., and D., as principals and joint makers, having their authority to do so. F. testified that M., his partner, had no authority from him to borrow money on the firm name, nor did he know what M. did with the money borrowed. *Held:* That the promissory note was valid and binding on the firm of F. & M.

2. SAME.—A member of such a firm as this of F. & M. may levy and sell, transfer and assign, either in pledge or by mortgage, the partnership effects in the name of the firm, or bind the firm by borrowing money; and if the individual partner wastes it it does not matter. And if a partnership engages in transactions outside of its usual business, the acts and declarations of one partner in relation to it are of the same force as acts in its ordinary business.

3. SAME.—Each partner, by virtue of that relation, is the general agent of the others as to all matters within the scope of the partnership dealings, and has all the authority necessary for carrying on the partnership, and has all the powers usually exercised by partners in the business in which they are engaged.

4. SAME.—A partner has power to transact the whole business of the firm, and to

bind his partners in such transactions as entirely as himself. The creation of a partnership for a particular purpose is understood to be a grant of power to the acting members to transact its business in the usual way; and the partner, when conducting the affairs of the partnership, does not act for himself because of his own interest, and then for the rest by their authority, but acts for and represents the commercial personalty.

5. SAME.—The power of each partner to put the firm name to negotiable paper is essential to its business, and is implied from the existence of the partnership, and stipulations among the members restraining the power to one or more, will not affect third persons without notice; and whenever the name of the firm appears on commercial paper it is *prima facie* bound, and the *onus* is on the firm, or on each member, to show that it, or he, is not liable.

6. REPRESENTATIONS OF PARTNERS—EFFECT OF.—All statements, admissions, and representations made by an individual partner, touching the firm transactions, have the same effect as if made by all the members of the partnership.

7. COMPETENCY OF PARTY AS WITNESS.—In an action at law on a promissory note against the survivor of a co-partnership to recover money borrowed in the name of the firm by the deceased partner, the plaintiff, the lender, is a competent witness to establish the debt, although it be a larger sum than fifty dollars.

Error to the circuit court of Covington county. McNAIR, J.

The plaintiff in error assigned the following errors:

1st. The court erred in overruling the objections of the plaintiff in error to the evidence of the defendant in error offered on the trial.

2d. Because the evidence of the statements of Cornelius McLaurin, the deceased partner, should have been excluded from the jury.

3d. The court erred in refusing a new trial.

4th. The court erred in refusing the first and second instructions asked by plaintiff in error.

5th. The court erred in not granting a new trial because of improper conduct on the part of the jury.

*H. B. Mayes*, for the plaintiff in error,

Insists that Jordan was not a competent witness in his own behalf to fix the liability of Faler for an amount exceeding fifty dollars; because he was not only a party to the action, but had a pecuniary interest in the matter in issue. 1 Greenl. Ev., 440, note 2. Besides, his testimony tended to establish a claim for a sum over fifty dollars against the estate of a deceased person. Rev. Code, 510. A deceased

partner may be said to have three classes of representatives :
1st. The lien, who takes the real estate ; 2d. The personal
representative, who takes the personal effects of the deceased;
3d. The surviving partner, who takes the entire partnership
property.   This property of the partnership is primarily to
be applied to the payment of the partnership debts and  lia-
bilities.   8 U. S. Dig. Ann., 464, § 80 ;  Andrews v. Brown, 21
Ala., 437; Story on Part., 494, § 326 ; ib., 143, § 97 ; ib., 135,
§§ 92, 93 ; ib.,  516, § 344;  ib.,  520,  § 347 ; ib., 517, § 346 ;
Thompson v. Brown, 4 Johns. Ch. Rep., 619, 510, 511.

Faler could not be reached except by fixing the liability of
the firm.   Such judgment against the firm would reduce the
interest to which the personal representative of Cornelius
McLaurin would be entitled on final settlement and distribu-
tion of the partnership effects.   Nichol v. Munford, 4 Johns.
Ch. R., 524, 525 ;  8 U. S. Ann. Dig., 464, § 80 ;  Andrews v.
Brown, 21 Ala., 437 ; Story on Part., 522, § 348.   If there is
a deficiency of assets to pay the partnership debts, the sur-
vivor paying the deficiency is entitled to contribution from
the legal representative of the deceased partner.   Story on
Part., 492, § 324, note 2; 1 Parsons on Part., 31, §. 3; 1
Montague on Part., 63 ; 1 Greenl. Ev., (7th ed.), 692, § 523 ;
ib., 710, § 536 ; ib., 257, § 189 ; ib., 258, § 180 ; ib., 713, § 539.

The statements of McLaurin were inadmissible for another
reason : the testimony does not show that at the time the
statements were said to have been made, McLaurin was a
partner of Faler ; and being no such partner, his statements
could not be used as against Faler.   Jordan swears that the
note was given for money loaned to McLaurin by himself.
Unless it was shown that the money thus borrowed was for
the use of the firm the verdict should have been for Faler.
On the point embraced in the fifth assignment of error see
1 Graham & Waterman on New Trials (2d ed.), 63, 64.

*J. B. Chrisman*, for defendant in error.

Can one member of a firm engaged in merchandising
make such a contract so as to bind the firm ?  This is the

whole question. The plaintiff in error objected on the hear-ing to evidence of the admissions and statements of McLaurin, made at the time of the transaction. If he had power to bind the firm there is no force in the objection. As to the authority of one partner to borrow money for the use of the firm, see 1 Story on Con., § 216, note 2; Parsons on Part., 217; 24 Barbour, § 49.

*B. Taylor*, on same side.

The provision of art. 190, p. 510, Rev. Code, was not intended to be so construed as to extend to suits against sur-viving partners, nor to protect surviving partners, for they can testify in their own behalf in suits brought by creditors against them in that capacity. In a suit by Faler against the estate of his deceased partner, McLaurin, for contribu-tion, Faler could not testify himself, but the record of the judgment in this case against him, as surviving partner, would be sufficient evidence to sustain his action. All the princi-ples involved in this case are laid down in, or are deducible from, the opinion of this court in Freeman v. Stewart, 41 Miss., 138, and Rev. Code, 357, articles 10, 12.

SIMRALL, J.:

Suit was brought by Jas. A. Jordan, against Harper, ad-ministrator *de bonis non* of Daniel McLaurin, deceased, W. I. Draughn, and Martin Faler, survivor of the co-partnership of Faler, McLaurin & Co., to recover the amount due on a promissory note, dated April 20th, 1860, at one day after date, for $1,000, made by Daniel McLaurin, W. I. Draughn, and Faler, McLaurin & Co.

The suit was dismissed as to Harper, administrator.

Faler pleaded *non est factum.* The firm was composed of Cornelius McLaurin and Faler.

The points for adjudication arise on the admissibility and competency of testimony, on the instructions to the jury and the refusal of the court to grant a new trial.

The circumstances attending the execution of the note, are these, as deposed to, by the plaintiff, Jordan: Cornelius

McLaurin applied for a loan of money, for. the use of the firm, and produced the note sued on, which was signed by Daniel McLaurin and W. I. Draughn, but blank as to amount; on receipt of the money, the firm name of Faler & McLaurin, was signed to the note. The authority to McLaurin to fill the blank was written under the note, and signed by Daniel McLaurin and W. Draughn. Does not know what Cornelius McLaurin did with the money, nor did Faler, so far as witness was aware, know anything of the transaction.

Faler, the defendant, stated, that at the date of the note, the firm was in existence, and doing business at Hazlehurst, their business was that of general merchants, buying and selling goods, merchandise and groceries; knew nothing of the note; never borrowed money on partnership account himself, nor never authorized any other person to do so; his partner had no such authority. That he drew drafts in firm name, on short time on their merchants in New Orleans; that the firm had a running account with their New Orleans merchant; balance sometimes for and against them.

At the date of the note, the partnership of Cornelius McLaurin and Faler was in existence, and the note is obligatory on Faler, if it was in the scope of the authority of one partner, to borrow money, and make a promise in the firm name, to repay it. In describing the authority of a partner, the jurists generally say, that each is the agent of the others, or rather of the firm, for all purposes within the limits of its business. Story on Part., § 216.

In Hankens v. Bourne, 8 W. & M., 703, Parker B., very clearly states it, thus : " One partner by virtue of that relation, is constituted a general agent for another, as to all matters within scope of the partnership dealings, and has communicated to him by virtue of that relation, all authorities, necessary for carrying on the partnership, and all such as are usually exercised by partners in that business in which they are engaged."

In Winship v. Bank of U. S., Marshall, C. J., said : "A partner has power to transact the whole business of the firm, and

consequently to bind his partners in such transactions as entirely as himself. When a partnership is formed for a particular purpose, it is understood to be in itself a grant of power to the acting members, to transact its business in the usual way."

Parsons, in his treatise on this subject, observes with an accurate conception of the legal idea: "The individual partner, when conducting the affairs of the partnership, is not acting for himself, because of his own interest, and then for the rest, by their authority, but as acting for and representing the 'commercial personalty.'" If a partnership engages in a transaction outside of its usual business, the acts and declarations of one partner, with respect to it, are of the same force as acts and declarations in the course of its ordinary business. Sandilands v. Marsh, 2 B. & Ald., 573. One member of a commercial firm, such as this of Faler & McLaurin, may buy and sell, may transfer and assign, either in pledge or by mortgage, the partnership effects, in the name of the firm. He may also bind the firm by borrowing money. Winship v. U. S. Bank, 5 Peters, 529; Whitaker v. Brown, 16 Wood, 505. Nor does it matter whether the individual partner waste or misapply the money. Onondaga Bank v. Dupuy, 17 Wend., 47.

The power of each partner to put the name of the firm to negotiable paper, is so essential to the conducting of its business, that it is implied from the very existence of the firm; and stipulations among the members, restricting the right to one or more, will not affect third parties without notice. Winship v. Bank of U. S., 5 Peters, 520; Bank of Ky. v. Brocking, 2 Litt., 41. Persons thus dealing with an individual partner, are not required to inquire whether he is restricted by the partnership articles. In the absence of knowledge to the contrary, they have the right to presume that he has the power. See Ray v. Johnson, 2 Peters, 186, 197; Comsey v. Baker, 7 Harris & J., 28. Whenever the partnership name appears on commercial paper, the firm is *prima facie* bound, and the *onus* is on the firm and each member to show that it or he is not liable.

It follows, from the principles already stated, that all statements, representations, and admissions, made by an individual partner, in reference to a firm transaction, are of the same effect as if made by all the members of the partnership. Thus, in Sweet v. Bradley, 24 Barb., 549, a member of the partnership sold promissory notes belonging to the firm, for account of the firm. He assured the purchaser that the notes were made in the regular course of trade—that the makers and indorsers were responsible. The notes, bought on the faith of these representations turned out to be worthless, and the statements false. It was held that the firm was responsible for the representations, and that an action would lie against all the partners, on the warranty. It would follow, from these principles, that Jordan is entitled to recover against Faler, unless, as complained in this court, improper testimony was admitted to the jury.

The competency of Jordan to prove the statements of McLaurin and the circumstances of making the note were objected to by Faler, on the ground that the witness was establishing a claim against the estate of Cornelius McLaurin, deceased, to an amount exceeding fifty dollars. The point is by no means free of difficulty. The 10th art. of the Code, 357 makes the contracts, promises and liabilities of copartners, joint and several. Art. 12. Joint or several suits may be brought against the survivors, and the representatives of the deceased partner.

In the attitude of the case when Jordan testified, the suit was against Faler alone as survivor. McLaurin's administrator was not a party. The objection arises under the Code, 510, art. 190. No person shall be incompetent to testify, whether a party to the suit or otherwise, by reason of any interest in the result thereof, or in the record as an instrument of evidence; provided, that no person shall be a witness in a suit by or against himself, to establish his own claim against the estate of a deceased person to an amount exceeding fifty dollars. Subject to the proviso, it was the plain intention of the legislature to remove the common law

incapacities by reason of interest in the result of the suit, or the record as an instrument of evidence, or because of being a party.    All these things are referred to on the score of credibility.    The court or jury, says the statute, shall give such weight to the testimony as, in view of the situation of the witnesses, and other circumstances, it may be fairly entitled to.    There is no doubt of the liability of Cornelius McLaurin. If he improperly put the firm name on the note, as Faler's testimony tends to show, still the promise would be his, and would bind him.

Jordan's testimony tended to give effect to the note as a copartnership debt.    It was not offered for the direct and immediate purpose of establishing a claim against the decedent, but to show that Faler, a living man, was liable.

For the purposes of liquidation, Faler was owner of all the partnership property and effects.    By survivorship he succeeded to these, mainly for the purpose of discharging the debts of the firm.    It was his duty to so apply them.    The effect of Jordan's testimony was to establish a right to reach the joint effects which the survivorship had vested in him.

The legal title to the property and credits of the firm devolved, by law, on Faler.    It is also true that the estate of McLaurin conisted in part, at least, in this property and choses in action.    His administrator had beneficially, and in equity, the same extent of interest in them that McLaurin had at the time of his death.    The interest of the administrator of a deceased partner is analagous to that of a distributee.    The administrator takes the legal title as trustee. Through him the distributee gets the surplus after creditors are satisfied.    It is the interest and the right of the distributee to see the fiduciary duties of the administrator justly executed.    The surviving partner takes the entire joint property and credits, not as absolute owner in his own right, but that the business of the commercial personalty may be more conveniently liquidated.    He concentrates in himself his own title as well as the beneficial interest of the deceased partner.    He deals with the effects as owner, to wind up the

partnership affairs, and to render a settlement of the profits and surplus (if there be any), and handing over to the legal representative of the deceased partner his portion and share thereof. Moreover, the joint debts may be collected out of the separate estate of the partners or of a deceased member. The joint property and choses in action in possession of the survivor, in effect, constitute a part of the estate of the deceased partner, and, necessarily, the recovery of a judgment against the survivor establishes, at least, to the extent of the value of partnership effects, a claim against the estate of a decedent. Such judgment would reach, for its satisfaction, the joint property and credits, and yet the legal representative of the decedent need not be a party to such suit. There is such privity between the survivor and the legal representative of the decedent that the latter would be concluded by such recovery as completely as the distributee by a judgment against the administrator.

The plea of Faler is a special *non est factum:* "That he did not sign the notes or authorize another to do so for him, but that the same was signed by some person to bind the firm of Faler & McLaurin, as sureties for Daniel McLaurin, without his knowledge and consent," etc.

It does not seem to have been brought into controversy, that Cornelius McLaurin was bound by the note; he signed the firm name; that made it his contract, although the fact may be true as stated in the plea, that the firm name was used as surety for Daniel McLaurin.

If the controversy had been, whether the name of Faler & McLaurin had been forged, then the question would have been as to the liability of the firm collectively, and of each member individually; and the testimony of Jordan, in this condition of pleadings, might not be competent, for if that issue were proved for the defendant, it would exonerate the parties to the paper.

The gist of the plea is that the firm name was signed, as surety, without Faler's consent. The plea would be sustained, although Cornelius McLaurin may have signed the

firm name, if the main proposition were proved, that he did so as surety for Daniel McLaurin, for he did not have the implied power to so use the co-partnership name.

Faler insists that he never was bound by the paper, because the firm name was placed upon it as surety. If that be so, it is only the contract of the individual partner who signed the firm name. The issue was on this point, as between Faler and Jordan.

The plaintiff sought to hold Faler responsible on the note. Faler replies: Cornelius McLaurin may be liable, but I am not, for the firm name was used as surety. The object of the suit then was not to establish a claim against a decedent, but to fix a liability on a living person.

The success of the suit instead of creating a burden on the estate of the decedent, would divide the responsibility with another.

McLaurin's individual estate, as well as his interest in the copartnership, is liable for the debt. The effect of the testimony was to subject Faler personally and as surviving partner, with the same liability. It would be, therefore, in exoneration of McLaurin's estate that Jordan should recover this suit, and the testimony objected to by Faler would be for the benefit and interest of the administrator, Harper.

We are not unmindful of the collateral consequences as to the estate of the deceased partner.

If this judgment subjects all the copartnership property in the hands of the survivor to its satisfaction, and should Faler pay it out of his individual means, he would have a claim to contribution against the administrator of McLaurin, and in enforcing such a claim, the record of this judgment would be conclusive in his behalf. In this remote sense it may be said that the testimony of Jordan establishes a claim against the estate of the decedent.

In Lamar v. Williams, admr., 39 Miss., 347, a construction was given to the term "claim," as used in the statute. The suit was for "tort" to the property of the intestate in his lifetime. It was said that it did not mean a fixed debt, or

·even a demand *ex contractu.* The policy of the proviso is declared to be that a living party, either plaintiff or defendant, in an action in which the representative of a decedent's estate is a party, shall not be competent to establish his "demand or right" asserted and relied on in the action against the estate.

Also, Griffin v. Lover, 37 Miss., 458. In the former case the language of the court is that the "representative of the decedent must be a party to the suit in which the living party proposed to testify," in order to come within the statute. The records used by the court go to the extent of holding, that the testimony must, in the particular suit, establish a claim or right against the estate of the decedent. If its only effect would be remotely and collaterally to contributet to, or create a liability that may or may not be vindicated in some other proceeding, the testimony ought to be received.

Without attempting to provide a general rule, or to anticipate a particular state of circumstances in which such witness would or would not be competent, we prefer to rest our judgment on the peculiar state of facts presented in this case. For the reasons given, we think that the plaintiff, Jordan, was a competent witness as to the matters to which he deposed; and being also of opinion that the plaintiff was entitled on the testimony to recover, it becomes unnecessary to examine the instructions given to the jury.

Let the judgment be affirmed.