WIGGINS TURPENTINE Co. *v.* CALAMITY LAND Co..

[68 South. 919.]

WITNESSES. *Competency. Transactions with decedent. Officers and stockholders of corporations.*

Under Code 1906, section 1917, providing that a person shall not testify as a witness to establish his claim against the estate of a decedent, which originated during the lifetime of the decedent, where a corporation sues a defendant corporation for damages to its timber. The president of the plaintiff corporation who owns all of its stock is not an incompetent witness to testify that the president of the defendant corporation who owned fifty per cent of its capital stock, and who died before suit, had applied to him for the privilege of working the timber for turpentine, which had been refused. Since the suit is not based on a claim between the two presidents as individuals but is a suit between two corporations and the statute was designed for the protection of natural persons and will not be enlarged to cover transactions between artificial persons.

·Appeal from the chancery court of Harrison county. Hon. J. M. Stevens, Judge.

Suit by the Calamity Land Company against the Wiggins Turpentine Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*C. A. French* and *R. B. Anderson,* for appellant.

*Ford & White,* for appellant.

It is true that this is not, in the strictest application of the term, a claim against "the estate of a deceased person," but it is a claim against a corporation of which a deceased person was president and general manager, and of the stock of which he owned fifty per cent. It grows out of a transaction conducted by the corporation through its said president and general manager, and to the extent of the stock owned by Currie. The testimony of Farnsworth, who was the sole owner of the stock of complainant corporation tended to establish his claim against the estate of a deceased person. If Currie had owned the entire stock of the Wiggins Turpentine Company, and this stock had constituted his entire estate, would not this suit constitute an ef-- fort to establish a claim against his estate? And as Farnsworth owns the entire stock of the Calamity Land Company, is it not Farnsworth's claim that is sought to be established?

The courts have sought to apply section 1917 of the Code so as to give effect to the spirit and purpose of the statute; and have enforced the principle underlying the statute in its broadest scope.

In the case of *Whitehead* v. *Kirk,* 61 So. 741, the court said: "Whenever a witness is offered for the purpose of proving any transaction, act, contract, admission, license, condition etc. (whatever may be its nature) as a "fact to be proven," and proven as a fact existing

or occurring prior to the death, and the proof of such fact as then existing or occurring is determinative of a claim or right of such witness to or in property of the deceased, and establishes such claim or right directly and finally, there the witness is testifying to establish his claim, which originated during the lifetime of such deceased. In short the word "claim" as sued in this statute, is employed in a broad and general sense; and it draws into the prohibition all testimony, the direct, immediate and final effect of which is to establish in the witness' own behalf a right in or to things prior to the death. *Whitehead* v. *Kirk,* 61 So. 741. In a number of cases throughout the country it has been held that statutes similar to ours operated to prevent an officer of a corporation who was interested financially in it, as a stockholder from testifying to establish the claim of the corporation against the estate of a deceased person.

In the case of *Mitchell* v. *Tishomingo Savings Institute,* 56 Miss. 444, the court held that a president of a bank was a competent witness under the statute to establish a claim of such institution against the estate of a deceased person, but in that case the court based its ruling, that the president was a competent witness, on the fact that the president was a mere agent of the institution and was not interested in anyway in its property, it not having been shown that the president of the company was a shareholder in the institution. *Mitchell* v. *Tishomingo Savings Institution,* 56 Miss. 444.

A member of a beneficial association is interested in the result of a suit to recover from it an assessment of a benefit certificate and it therefore disqualified from testifying against the plaintiff suing as administrator under a statute prohibiting every person from testifying in a suit against the administrator who is interested in the result of the suit. *Cronin* v. *Roualc,* 93 Am. St. Rep. 127.

The interest stockholders in a corporation have in the recovery of debts due the corporation is a certain definite interest and such as disqualified them from testifying in behalf of the corporation against the estate of a deceased creditor with respect to transactions of the deceased. *Crencla National Bank* v. *Ragland Administrator*, 108 So. 854, 37 Ky. Law Rep. 1403; 4 Am. Dig., Title Witnesses, par. 142.

A stockholder having a financial interest in a case cannot testify for the company in an action by representatives of a deceased as to the conversations etc., with the deceased. *Massey's Administrator* v. *Pike Consolidated Coal Co.*, 116 So. 276; 6 Am. Dig., Title Witnesses, par. 142.

A stockholder in a corporation, though acting in the capacity of, manager or superintendent, cannot be heard to give in evidence a conversation with a deceased employee upon matters material to the issue in the litigation against the corporation for wrongfully causing his death. *Peterson* v. *Merchants' Elevator Company*, 27 L. R. A. (N. S.) 817.

The stockholders of a bank are not competent to testify to the conversations or transactions had by them with the deceased cashier in a suit by the bank against the administrator of the cashier. *Wynn* v. *Tallapoosa County Bank*, 53 So. 241.

If a stockholder in a corporation is prohibited by reason of interest from testifying to establish claim of the corporation against a deceased person, by the same principle an individual or an interested stockholder should be prohibited from testifying to establish his claim against a corporation growing out of the acts or conduct of the corporation through its president and general manager, (since deceased) who owned fifty per cent. of the stock of the corporation.

*Bowers & Griffith,* for appellee.

The appellant is relying for a reversal in this case really solely upon the proposition that the court erred in not suppressing the deposition of Farnsworth, the president of appellee company on the ground that Currie the president of appellant company is dead, and that since Currie owned one-half the stock of appellant company, Farnsworth would be testifying to establish his claim against the estate of a deceased person.

A number of cases are cited by appellant to the effect that an officer owning stock in a corporation could not testify to establish the claim of the corporation against the estate of an individual decedent but cites none to the effect that under a statute like ours such a witness can not testify to establish his company's claim against another corporation although some stock holder of said latter corporation may have since died, and we have been able to find no such case, as of course counsel for appellant could not, since he fails to cite one.    There is no such case under a statute such as ours and in the volume of litigation that has arisen on this subject the absence of such case is significant to the point of conclusiveness that such contention is not the law.    It was decided to the contrary of appellant's contention in at least one case we have been able to find—*Bexar Bld'g & Loan Ass'n* v. *Newman,* 25 So. 461, wherein it is said that the statute has not been made to apply to corporations against which claims are asserted.    And manifestly it will never be made so to apply, for if so, how much stock shall the deceased stockholder own?    Shall it be one-half or one-fourth, or a hundredth part or a thousandth?    Where is the authority to draw the line. If it applies where the deceased owns one-half the stock, shall it not likewise apply if he own a thousandth part?    And so in all the suits against railroad companies, sawmill companies and the hundreds of other corporate enterprises making up so large a part of our com-

mercial and industrial life, are we to be met with the prohibition against the plaintiff's testifying because some stockholder of the defendant corporation has since died? To state the proposition is to reject it.

Cook, J., delivered the opinion of the court.

We can find no error in this record, and but one assignment of error deemed of sufficient importance to write about. This is a suit by the Calamity Land Company, a corporation, against the Wiggins Turpentine Company, a corporation, to recover actual and exemplary damages for damaging the property of the complainant company. To show that the trespass was wanton, the president of the complainant company was permitted to testify, over defendant's objections, that the president of the defendant company applied to him for the privilege of working the timber in question, and that he refused the permission and forbade the working of the timber. It appears that the president of the defendant company died before the beginning of this suit, and it is the position of appellant, defendant below, that the president of the complainant company was thus permitted to establish his claim against the estate of a deceased person, in violation of section 1917, Code 1906. There seems to be some doubt from the record whether the claims "originated during the lifetime" of the deceased president of the defendant company, but for the purposes of this decision we will consider the point as if the transactions testified about originated before the death of the president. It is said that Mr. Currie, the deceased president, was the owner of fifty per cent. of the capital stock of the defendant corporation, and that Mr. Farnsworth owned all of the stock of the complainant company. From these facts it is argued that the suit was really based on the claim of Mr. Farnsworth, and was his claim in the

statutory sense, and a claim against the estate of the deceased president of the defendant company.

Was this a suit against the estate of a deceased person, and was it a claim of Mr. Farnsworth? The answer to these questions will test the soundness of appellant's contention. As a matter of fact the suit is against a living corporation, a legal entity; but it is argued that, the purpose and spirit of the statute being to seal the lips of the living because death has sealed the lips of the dead, and the witness being indirectly interested in the claim, the statute excludes his testimony. There is no statute rendering incompetent the testimony of a living witness touching the acts and words of a dead person, whose words and acts are evidential in the issues involved in a law suit. The living witness is competent to testify concerning conversations with the deceased, unless it appears that the purpose and effect of his testimony is to establish the witness' claim against the estate of the deceased. The witness here was the owner of the entire capital stock of the suing corporation, and in a sense he is the corporation, or rather the corporation is the witness himself doing business under a corporate name. This is stating the case stronger than it is stated in the briefs of appellant, to test the principles involved. How would the case stand if the record disclosed the facts to be that the suing corporation is capitalized at one million dollars and the witness owns one hundred dollars of the stock?

Again, it is said that the dead president owned fifty per centum of the capital stock of the defendant company, and that a judgment against the company would necessarily entail a loss to his estate. Would the case be different if he owned all of the capital stock, or owned only one per cent. thereof? Neither the amount and value of the capital stock owned by Mr. Farnsworth nor the amount and value of Mr. Currie's stock in the defendant company is determinative of the question un-

der consideration.   This seems to be obvious, because a contrary holding would present problems which could not be solved, except by the adoption of some arbitrary rule, varying according to the views of individual judges.   We think the statute cannot be applied here. This suit is not based on the claim of Mr. Farnsworth, and it is not against the estate of Mr. Currie.   True, Mr. Currie's estate may be remotely affected by this judgment; but in these days, when the great bulk of the business of the country is done by corporations, and some part of the capital stock of a large proportion of the corporations is owned by the executive officers thereof, who carry on the business of the corporation by agreement and understandings with each other, a statute designed for the protection of natural persons cannot be safely enlarged to cover transactions of artificial persons, especially when it is manifest that the evidence offered is not condemned by the terms of the statute. In support of our views we cite *McCutchen* v. *Rice,* 56 Miss. 455; *Faler* v. *Jordan,* 44 Miss. 283; *Bexar Bldg. & Loan Association* v. *Newman* (Tex. Civ. App.), 25 S. W. 461.

*Affirmed.*

STEVENS, J., took no part.