HUTCHINSON *v.* GASTON.

[91 South. 193, In Banc. No. 22118.]

1. WITNESSES. *Witness cannot testify to establish his own claim, originating during decedent's life, against decedent's estate.*

A witness cannot testify to establish his own claim or defense against the estate of a deceased person, which originated during the lifetime of such deceased person, although the deceased person was not himself conversant with the facts out of which the claim arose, the transaction having been attended to for him by an agent who is still living. Section 1917, Code 1906 (Hemingway's Code, section 1577).

2. FRAUDS, STATUTE OF. *Landlord's request to dealer in mules regarding sale to a negro held to show intended credit was to landlord so that contract was not within statute.*

The only inference to be drawn from a request made by a landlord to a dealer in mules "that she would have a nigger down there and he would want a mule and to do the best I could for him, of course, she would have the difference to pay," is that the landlord intended for the credit for the difference in the value of the mules to be extended direct to her; consequently, the contract is not within the statute of frauds and is valid, though not in writing.

3. APPEAL AND ERROR. *Verdict on conflicting evidence not disturbed.*
A verdict should not be directed where the evidence is in conflict.

APPEAL from circuit court of Lowndes county.
HON. T. B. CARROLL, Judge.

Suit by Ira L. Gaston, administrator of the estate of Ira T. Gaston, deceased, against Mrs. E. N. Hutchinson. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 89 So. 921.

*John I. Frierson,* for appellant.

Inasmuch as the defendant anticipated that objection would be made to her testifying, on the ground that she would be testifying to establish her defense against the estate of a deceased person, the defendant interposed an objection when Egger, the agent of the deceased, was placed on the stand to testify, and in that objection she set out as a reason that the law had closed her mouth to contradict the witness introduced and therefore she thought that the mouth of the witness himself should be closed from testifying.

This section 1917 of the Code of 1906, has been before the supreme court many times. It is thoroughly and completely reviewed on most of the points in the statute in the case of *Whitehead* v. *Kirk,* 61 So. 737, 62 So. 432, but the case more nearly analogous to the case at bar is that of *McCaughan* v. *Hardy,* 29 So. 397, 78 Miss. 598.

The opinion in the McCaughan case was rendered by Judge CALHOUN. It is very short and suggests that though Judge CALHOUN thought the law to be one way he thought that justice and right were the other. It reads as follows: "We cannot hold that there was error in suppressing the deposition. If it were an original proposition we might or might not do so, but we feel bound by the cases of *Duncan* v. *Gerdine,* 59 Miss. 550, and *Wetherby* v. *Roots,* 72 Miss. 355, 16 So. 902. We cannot reverse the chancellor on the facts. Affirmed."

The case of *Duncan* v. *Gerdine,* referred to above is not analogous to the McCaughan case and we think that the supreme court failed to draw the distinction. The Duncan case had been before the supreme court on two previous

occasions; 57 Miss. 820, and 58 Miss. 390, and a judgment had against Mrs. Duncan. Mrs. Duncan filed a bill assailing the judgment under the Married Woman's Law and when that position was lost (*Duncan* v. *Robertson*, 58 Miss. 390), she obtained leave to file an amended bill, which alleged that the lower court had no jurisdiction because summons was never served upon her and the injunction against the judgment was reinstated. After B. F. Robertson answered the amended bill and denied the averment of want of summons, he died and the case was revived against the appellees, who, at the final hearing, on the evidence in the opinion, obtained a decree dissolving the injunction and dismissing the bill. The question was raised as to the competency of Mrs. Duncan as a witness. On the point the court said (59 Miss. 556) : "The controversy is between her and the representative of a deceased person; its purpose is to free her from a liability to the estate existing in the lifetime of the deceased. The chancellor, however, in the opinion delivered by him in overruling objections to her competency, states that, though she is prohibited by the letter of the statute from testifying, she is not forbidden by the spirit of the statute, because the facts testified to by her were not in relation to any communication with the deceased or touching any matter of which he had personal knowledge and therefore, as he would not have contradicted her if alive, she is a competent witness. We do not concur in this view. The law declares that no person shall testify as a witness to establish his own claim to any amount for or against the estate of a deceased person, which originated during the lifetime of the deceased. There is no limitation or qualification of the prohibition."

The opinion goes on to say : "R. W. Miller, the deputy sheriff, was incompetent to give testimony contradicting the return made by him on the writ;" citing *Stone* v. *Montgomery*, 35 Miss. 83. Therefore in the Duncan case, the distinction from the case at bar is that R. W. Miller, the deputy sheriff, was not permitted to testify, and in the

McCaughan case W. H. Hardy was permitted to testify. The law presumed that the return of the sheriff was regular. If the validity of the return had been established by the oral testimony of the deputy sheriff instead of his written return, the case would have been analogous to the McCaughan case and to the case at bar.

Therefore in the Duncan case, the distinction from the case at bar is that R. W. Miller, the deputy sheriff, was not permitted to testify, and in the McCaughan case, W. H. Hardy was permitted to testify. The law presumed that the return of the sheriff was regular. If the validity of the return had been established by the oral testimony of the deputy sheriff instead of his written return, the case would have been analogous to the McCaughan case and to the case at bar.

In the *Wetherby case,* 72 Miss. 255, 16 So. 902, action was brought by *Logan H. Roots* v. *H. E. Wetherby,* on a note executed by Wetherby. Plaintiff died pending suit and the administrator was substituted as plaintiff. Judgment for plaintiff and defendant appealed. Affirmed.

In the Duncan case the court differentiated it from the case of *Strickland* v. *Hudson,* 55 Miss. 235. In the Strickland case the plaintiff in error had had two new trials. Mrs. Hudson testified, and died between the trials. Her evidence was preserved from a former trial and introduced, after her death at a retrial. When Strickland was introduced to testify as to matters covered by her testimony, his testimony was excluded. The court said: "Strickland should have been permitted to testify to the matters covered by her evidence. His exclusion was within the letter but not the spirit and intent of the statute, on the subject of parties testifying." *Quin haeret in litera, haeret in contice. Mumm, Admr.* v. *Owens,* 2 Dill (U. S.) 475 (Fed. Cas. No. 9919) ; *Monroe* v. *Napier et al.* 52 Ga. 385; *Jacks et al.* v. *Bridwell et ux,* 51 Miss. 881.

It would be most unjust to permit the testimony of one of the parties to a transaction to go to the jury and exclude that of the other, and such a result not within the

contemplation of the law.  The principle is that the living party shall not be heard to give his version of a transaction about which death has sealed the lips of the other; but when testimony of the deceased party is made available in the controversy, it would shock justice to deny the right of the living party, to be heard as to the matters covered by that testimony.

We respectfully submit that the testimony of Mrs. Hudson was no more available in the Strickland case than the testimony of Ira T. Gaston, the deceased, was available through his agent Egger, in the case at bar.

In all the cases in the books that have been before the supreme court on that statute, except the McCaughan case, the court cites and recited the principle on which the statute is based.  In the *Duncan case*, 59 Miss. 557, the court says: "But it is the fact that the controversy is between the living and the dead; and the silence which death has imposed on one, the law imposes on the other; absolute equality is sought by the statute, and beyond this we did not go in the case cited."  (Strickland case.)

In *Jacks* v. *Bridwell*, 51 Miss. 881, 889, the court says: "The object is to prevent the assertion of rights to what a deceased person left, by virtue of some act of such deceased person, from being supported by the testimony of him who asserts the right."  We submit that both parties to the transaction in the case at bar were alive, Mrs. Hutchinson and Eugene Egger.  They were the parties to the transaction.  Or, it would be better to say, both parties were physically alive, and one was allowed to testify.

The primary purpose, the rightous purpose, the just and reasonable purpose of the testimony of Mrs. Hutchinson was to contradict the testimony of Egger.  They were the two parties to the transaction.  She and deceased might or might not have been parties to the transaction.  The deceased knew nothing whatever about the transaction.  Similar circumstances and conditions prevail in the McCaughan case.

Plea of the statute of fraud. The third assignment of error is: "The court erred in refusing to give a peremptory instruction for the defendant." The fourth is: "The court erred in giving the peremptory instruction for the plaintiff."

The contention of the defendant under this view of the case was that she had a right to the benefit of the statute of frauds and she pleaded the statute of frauds and that the suit was an attempt to compel her to answer for the debt, default or miscarriage of another with a writing.

That in the conversation over the telephone Mrs. Hutchinson said: "I will send a negro to you and you treat him right, because I will have the difference to pay. The material and vital words in the matter are, because I will have the difference to pay. On the interpretation of these words by the court, he granted a peremptory instruction for the plaintiff."

Defendant claimed that there was no original understanding on her part, and that the above-quoted words did not signify or imply an original undertaking, but so far failed to imply or signify an original undertaking as to entitle this appellant, defendant below, to the peremptory instruction asked by her. The law in the cases on this point has been completely and accurately defined by judicial interpretation and construction. It is set out in the cases of, *Sweatman* v. *Parker,* 49 Miss. 19; *Bloom* v. *McGrath,* 53 Miss. 249; *Hendrick* v. *Robinson,* 56 Miss. 694; *Wray* v. *Cox,* 38 So. 344.

We lay down this proposition: That under the testimony appellant could be held only on a collateral undertaking. It must be remembered that it devolved on the plaintiff to make his case by a preponderance of the evidence and also that in any case where the entire consideration moves to a third party, defendant, to whom no consideration had moved, cannot be charged unless the evidence that defendant undertook the obligation primarily, be clear, plain, distinct and unequivocal. (12 Ency. of Ev., 3.) *Guthrie* v. *Man* (Tex.), 35 S. W 710; *Leach* v. *Morton*

(Colo.), 87 Pac. 1081; *Jones* v. *Field* (Ala.), 3 So. 893; *Vandervier* v. *Fetta* (Colo.), 38 Pac. 466; *Williamson* v. *Williamson,* Iowa, 279; *Lawreence* v. *Springer* (N. J.), 24 Atl. 933, 31 A. S. R. 702, 31 A. S. R. 709. The promise to pay must be direct and unconditional. *Mankin* v. *Jones* (W. Va.), 15 L. R. A. (N. S.) 241; *Hurst Hardware Co.* v. *Goodman* (W. Va.), 32 L. R. A. (N. S.) 598.

We next argue that even if the peremptory instruction for the defendant be not allowed, that the peremptory instruction for the plaintiff should not have been granted, but that the matter should have been submitted to the jury for them to say whether the promise to pay was original or collateral.

*Callaway & Johnson,* for appellee.

The statute involved is section 1917, Code of 1906, which has been before this court many times, more times perhaps than any other statute of a civil nature. Of course not in all the cases has the court passed upon the question raised by appellant, for the reason that in many of them it was not raised, but in every case where the point was raised that is raised in the case at bar, the court has decided the issue adversely to appellant's contention; held that the defendant or plaintiff, as the case might be, could not testify to establish his claim or defense against the estate of a deceased person, and that even though the transaction was had with the agent of deceased, wholly. The following cases show this to be true: *McCaughn* v. *Hardy,* 78 Miss. 598, 29 So. 397; *Duncan* v *Gerdine,* 59 Miss. 550; *Wetherby* v. *Roots,* 72 Miss. 355, 16 So. 902.

There is no limitation or qualification of the prohibition, nor does the case at bar come within the rule laid down in *Strickland* v. *Hudson,* 55 Miss. 235. In that case the deceased on a former trial had testified in the cause, and, after her death on a subsequent trial, evidence was given of her former testimony. Under these circumstances it was said that Strickland should have been permitted to testify as to all matters covered by her evidence.

The court in this case held that R. W. Miller was prohibited from testifying to contradict the return made on the summons—citing *Stone* v. *Montgomery,* 35 Miss. 83, but counsel for appellant fails to point out that the husband for Mrs. Duncan did testify and contradict the truthfulness of the return. Learned counsel for appellant contends that as the deputy sheriff, Miller, was not permitted to testify in the McCaughn-Hardy case, that this was a distinction overlooked by the supreme court in that case, which has it observed would have caused the court to hold otherwise than it did. In our humble opinion, there is utterly no foundation for such conclusion.

*Weatherbee* v. *Roots,* 72 Miss. 355, 16 So. 902, is only slightly noticed by appellant's attorney. This was a case where the agent of a payee in a note was alleged to have perpetrated a fraud on the payor and secured the note without consideration. The payor was sued on the note and undertook to testify himself as to the fraud perpetrated upon him by the agent of deceased payee, and although this was a case where the decedent, if alive, could not have contradicted the payor, he was nevertheless held incompetent under the statute. Appellant seeks to avoid the force of this decision by saying this case is different to the case at bar and to the McCaughn-Hardy case because here the payor was attacking the validity of a note. We have searched diligently to find any law holding that a promise to pay in writing is more binding than one resting in parol, but without avail. We take that the statute makes a person no more competent or incompetent to testify relative to a claim evidenced in writing than one resting in parol. The attorney for appellant thinks there is a marked distinction, but cites no authorities.

The case of *Strickland* v. *Hudson,* 55 Miss. 235, was distinguished from the Duncan-Gerdine case because in the former the evidence of Mrs. Hudson was given in a former trial of that case and introduced after her death in another trial of the case. Her actual testimony of the facts was available because of this former testimony which was

introduced. Our legislature has had abundant opportunity to change this statute. It has not done so.

This court quoted with approval an excerpt from the case of *Koch* v. *Bridges,* 5. Miss. 258-50, as follows: "It is a dangerous thing to attempt to be wiser than the law, and where its requirements are plain and positive, the courts are not called upon to give reasons why it was enacted. A judge should rarely take upon himself to say that what the legislatures have required is unnecessary." *Ellis et al.* v. *Tillman et al.,* 88 So. 281.

We have not examined all the authorities cited by attorney for appellant under his first two assignments of error. Those we have examined all relate to rules relative the construction of statutes, and are to the effect according to his own analysis, that the court should give the effect intended by the legislature. We contend that the courts have given the statute the effect the legislature intended. The wording of the statute is such that no doubt of this can exist. Then the fact that this statute has been brought forward without change from time to time in the different codes, construed all along as it now is since 1882, we take it that our lawmakers have been satisfied with the construction given it by our court; if not, the legislature would doubtless have changed or modified the statute. We do not believe the court would be justified in changing or modifying the law; the legislature should take the initiative, not the court.

We therefore submit that there is no merit to appellant's first two assignments of error.

Plea of the statute of frauds. Under the above heading, attorney for appellant, assigns as error: Third: The court erred in refusing to give a peremptory instruction for the defendant. Fourth: The court erred in giving the peremptory instruction for the plaintiff.

These assignments are wholly without merit in that the proof does not show that Mrs. Hutchinson's promise was to answer for the debt, default, or miscarriage of an-

other, but on the contrary it shows that the promise was an original promise to pay.

SMITH, C. J., delivered the opinion of the court.

This is a suit begun in the court of a justice of the peace to recover from the appellant the balance alleged to be due by her, for a mule sold to her by the appellee's intestate. The case, for the appellee, was proven by one Egger, who stated that he sold the mule to Mrs. Hutchinson for Gaston, his evidence relative thereto being as follows:

"Q. State whether or not you ever had any conversation with Mrs. Hutchinson over the telephone about this transaction. A. Yes, sir.

"Q. What was it? A. She said she would have a nigger down there and for me to try to treat him right and give him a good trade and try to trade him something that would suit him—that was worth the money—I suppose.

. . .

"Q. State whether or not, Mr. Egger, previous to this trade you had had any conversation with Mrs. Hutchinson about the buying of a mule. A. Yes, sir; I had.

"Q. What did she say? (Objected to by the defendant unless it was about this particular mule.) A. (by witness.) The conversation was about the same I had over the telephone with her; she just mentioned that she 'would have a nigger down there and that he would want a mule.'

"Q. State all the conversation you remember—not the substance of it, but what you remember of it. A. That is about all that I remember; she just mentioned that she would have a nigger down there and he would want a mule and to do the best I could for him, of course, she would have the difference to pay.

"Q. She said that? A. Yes, sir. . . .

"Q. State why you charged this one hundred and eighty-five dollars to Mrs. Hutchinson. (Objected to by the defendant as leading. Objection overruled.) A. Why I charged it to her?

"Q. Yes, sir. A. Why, there was no one else to charge it to; I had instructions from her and I had to make some record of it."

The date of this telephone conversation was not given, but the charge for the mule was entered by the witness on Gaston's books on January 31, 1920. The witness further stated that Ex Blevin, a negro tenant of the appellant, came to Gaston's sales stable, accompanied by a man by the name of Burdine, and delivered to the witness a mule in exchange for another, the amount here sought to be recovered from the appellant being the difference in the value of the two mules. The witness also stated that Burdine managed the appellant's plantation. But no claim is made that Burdine either represented or had the right to represent the appellant in the transaction, or that either he or Blevins told Egger to charge the difference between the value of the two mules to the appellant. Some time after the mule had been delivered to Blevins, but when does not appear, the witness had a conversation with the appellant as follows:

"She said: 'What are we going to do about this mule trade—the negro isn't making anything;' and I told her that I didn't know—I said 'I don't know, Mrs. Hutchinson, I haven't got anything to do with it now; you will have to see Mr. Ira L. Gaston, who is the administrator for Mr. Ira T. Gaston's estate;' and that is about all the conversation we had about it."

For the appellant, Blevins testified to the effect that his trade with Egger for the mule was made without the knowledge or consent of the appellant, and that the only time he had spoken to her about trading his mule was "in the fall of 1919," more than a year before the trade was made, but whether the appellant then consented to the trade does not appear from his evidence. According to this witness nothing was said when the trade was made, either by him or by Egger, as to who was to pay the difference between the value of the two mules.

Gaston died after the alleged sale of the mule and before this suit was brought, because of which fact the court below properly refused to permit the appellant to testify as a witness in her own behalf. Section 1917, Code of 1906 (section 1577, Hemingway's Code).

At the close of the evidence the court below refused to grant an instruction directing the jury to find for the appellant, and granted one instructing the jury to find for the appellee.

The appellant's contentions are: First, that her alleged agreement, if in fact made, was to answer for the debt of another, and therefore cannot be enforced under the statute of frauds for the reason that it was not in writing; and, second, that the evidence is insufficient to show that the alleged promise by her to pay the difference in the value of the mules was in fact made.

If the appellant told Egger to make the exchange of the mules and that "she would, of course, have the difference to pay," the only inference that can be drawn therefrom is that she intended for the credit to be extended direct to her and not simply to guarantee the payment by the "nigger" of the difference in the value of the mules.

On the evidence, it was for the jury to say whether or not Egger, in fact had the telephone conversation he claims to have had with the appellant, and, if so, whether or not Blevins was the "nigger" intended to be therein referred to.

Both of the requests for a directed verdict should have been refused.

*Reversed and remanded.*