POOLE *v.* McCARTY, et al.

No. 41731 March 6, 1961 127 So. 2d 398

342

 

*Simrall, Aultman & Pope,* Hattiesburg, for appellant.

*McFarland & McFarland,* Bay Springs, for appellees.

ETHRIDGE, J.

 █ This case involves the question of whether the ''dead man's statute'' disqualifies as a witness one of the two parties to a contract for sale of minerals, where the other party also is living, but has subsequently conveyed to a third person, now deceased, a small fractional interest in the minerals.

Mississippi Code 1942, Sec. 1690 provides: ''A person shall not testify as a witness to establish his own

claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. But such person so interested shall be permitted to give evidence in support of his claim or defense against the estate of a deceased person which originated after the death of such deceased person in the course of administering the estate. . . ."

Under the present pleadings, appellant Poole brought this action in the Chancery Court of Smith County against appellee, McCarty, and subsequent transferees by McCarty of mineral interests in certain lands. Its purpose is to reform a contract between them, dated December 7, 1954, for mutual mistake, and to obtain specific performance of the reformed contract. In 1954, McCarty owned the surface and some of the minerals in the land. He had the right to purchase from the Federal Farm Mortgage Corporation its one-half mineral interest. 7 U. S. C. A., Secs. 1033-1039. By the contract McCarty employed Poole to purchase and recover for him the mineral interest owned by that corporation, at the option of Poole, who was to pay the amount necessary. McCarty agreed to convey to Poole 90 percent of the minerals so purchased. The contract provided that the option should continue for a period of 90 days "from and after this date, including any optional time" which McCarty may have to repurchase the mineral interest from the present owner. The contract was recorded.

The original bill of complaint was based solely upon the contract as written. It alleged that Poole filed application for purchase of minerals in McCarty's name and prosecuted it with diligence. In May 1955, the Federal Farm Mortgage Corporation offered to convey to McCarty its one-half mineral interest for $240,000. Complainant averred he exercised his option and offered to pay that amount, but defendant refused to carry out the contract, and instead purchased the minerals in his own

name. McCarty and other defendants, his transferees, filed a general demurrer to the bill. It was sustained by the chancery court and this Court. Poole v. McCarty, 229 Miss. 170, 90 So. 2d 190 (1956). It was held that the contract, as written, expired 90 days after its date.

The cause was remanded, and complainant amended the bill by adding certain averments as to mutual mistake of the parties in writing the 90-day period in the contract. It was averred that both parties intended the 90 days to run from the date when the federal corporation fixed the price. Hence the amended bill prayed for reformation and specific performance. At this second hearing, the chancery court sustained a plea of res judicata. On appeal, this Court reversed and remanded, holding the original decision in 229 Miss. 170 was decisive only of the issues there presented, but did not decide any question as to mutual mistake and reformation. Poole v. McCarty, 233 Miss. 724, 103 So. 2d 922 (1958).

On the third hearing, defendants filed their answer denying the charges of mutual mistake and the prayer for reformation. McCarty's transferees also pleaded that they were innocent purchasers for value without notice of any mutual mistake or other agreement. The mineral deed from the Federal Farm Mortgage Corporation to McCarty was recorded on March 8, 1955. Beginning in June 1955, McCarty conveyed various fractional interests to different transferees, apparently in the aggregate conveying all of the minerals.

On June 4, 1955, he conveyed to Robert T. and Margaret M. McLaurin a 50/280 mineral interest. On the same date the McLaurins conveyed a 5/280 mineral interest to Jack Deavours. Subsequently, Deavours died, and the cause was revived against his executors. Parenthetically, since the instant appeal came to this Court, Dr. R. T. McLaurin died, and the cause was revived also against his executors.

At the hearing, complainant took the stand to testify in his own behalf. He was asked whether he reached an agreement with McCarty concerning purchase of the minerals from the corporation. Defendants objected to any testimony by Poole, on the ground it would tend to establish his claim against the estate of Deavours, deceased. The court sustained this objection.

Complainant's tender of proof was to the effect that Poole and McCarty agreed that, when the corporation fixed a price, Poole would have 90 days from that date within which to elect whether he would pay the purchase price and take a 90 percent interest. Poole would testify that the 90-day clause of the contract was written under a mutual mistake of the parties; and that, when the corporation fixed the price, he exercised his option and offered to make the payment, but McCarty refused, and instead purchased all of the minerals for himself. It was also stated that Poole would not testify concerning any conversations between him and Deavours or any agent or representative of Deavours. The defendants then moved to exclude the evidence of complainant and dismiss the bill. This motion was sustained, and this appeal is from that action.

Appellant argues that the original contract was solely between him and McCarty; that the other defendants, including the deceased, Deavours, came into the picture when they bought fractional mineral interests from McCarty. There was no transaction between Poole and Deavours. All of it was between parties living at the time of the trial—Poole and McCarty. The tender of testimony by Poole on the issue of mutual mistake specified that it would not pertain to any transactions between him and the deceased, Deavours. In short, appellant says the incompetency rule of Sec. 1690 does not disqualify Poole as a witness, because he and McCarty, the only parties to the 1954 contract, are both living and available to testify. McCarty's fractional trans-

feree, Deavours, now deceased, was not a party and knew nothing about the original transaction. On the other hand, appellee asserts that the disqualification rule is not restricted to dealings between the witness and the deceased person. It disqualifies as to all matters of every kind taking place during the lifetime of decedent, by which the witness seeks to establish a claim against him.

Although some general statements in various decisions tend to support appellee's all-inclusive interpretation of Sec. 1690, this fact illustrates the need to keep in sight the purposes of the statute and the controlling facts in the decisions pertaining to it. Note, 6 Miss. L. J. 409 (1934); 2 Wigmore, Evidence (3d Ed., 1940), Sec. 578.

In Shepherd v. Johnston, 201 Miss. 99, 106, 28 So. 2d 661 (1947), these rules of construction of the statute were stated: ''Section 1690, Code 1942, prohibiting a person from testifying as a witness to establish his own claim against the estate of a deceased person, created an exception to the general rule as to the competency of a witness; and being an exception, it must be strictly construed in favor of the competency of the witness. The exception must come within both the letter and spirit of the statute. The previous decisions of this Court are to the effect that the testimony should be in support of a direct claim of the witness against the estate of the deceased person, as distinguished from an indirect or consequential claim against the estate, in order to render it incompetent.''

In *Shepherd* complainants sued Mrs. Johnston to establish a resulting trust in realty. She had taken the full title to it. Complainants offered to testify concerning an agreement between themselves and defendant's husband, now deceased, for purchase of the land. By it defendant would take title as security for a loan to complainants by the husband. It was held that the trial court erred in excluding 'this testimony, since neither the

estate of Dr. Johnston nor any of his heirs, other than his wife, were parties; and that the testimony, if true, would establish a resulting trust against defendant. The testimony was not in support of a direct claim of the witness against the estate of a deceased person, but only an indirect or consequential claim.

To the same effect is Clapper v. Powers, 222 Miss. 878, 894, 77 So. 2d 808 (1955). It was there said that the estate of the deceased was "only indirectly involved and the statute relied upon applies to a direct claim of the witness and not to an indirect one." See also Hawkins v. Rye, 233 Miss. 132, 101 So. 2d 516 (1958). Moreover, it is well settled that the distributee of the estate of a decedent is a competent witness to establish a claim of the decedent against the estate of another decedent. In such cases the court has also said that the statute applies only to a direct claim of the witness, not to an indirect one. McFarlane v. Plant, 185 Miss. 616, 626, 188 So. 530 (1939).

In other words, Poole did not seek to testify concerning a direct claim of his against the estate of the deceased transferee. His direct claim is against McCarty under the contract with him. Whatever claim Poole has against Deavour's estate is solely of an indirect or consequential nature. It is not the type of claim to which the statute refers, where both of the parties to the contract in litigation are living and can testify concerning it. They had no dealings with the deceased, Deavours, about it.

██ ██ These cases illustrate the fact that Sec. 1690 disqualifies only as to direct claims, not those which are indirect or consequential. In the instant case, both parties to the transaction are living and can testify. Hence the protected area of the statute does not exist. ██ ██ Its object is equality and the prevention of false swearing. The surviving party should not have the benefit of his own testimony where the adversary's lips are closed

by death. 58 Am. Jur., Witnesses, Sec. 215. The object is to prevent the living from testifying against the dead, in order to prevent injustice where there is no one to dispute or refute such testimony. 97 C. J. S., Witnesses, Sec. 132b; Hawkins v. Rye, *supra.*

Accordingly, the statute was obviously not intended to apply to a suit between the two living persons to a contract who are both available to testify. 58 Am. Jur., Witnesses, Sec. 339, p. 204, states this principle as follows: "No exclusion exists where a suit is between two living persons on a contract between them although another contract between one of them and a deceased person is a material fact in the case bearing on the right of recovery. The disqualification does not extend to a party to a different contract from that involved in the action but of similar nature, nor to the guarantor of the contract sued on." In Cole v. Shurtleff, 41 Vt. 311, 98 Am. Dec. 587 (1868), it was said: "As the promise relied upon by the defendant was made as between these parties to the action, and neither being dead, the disqualification contemplated by the statute does not apply."

A rather close analogy to the instant question arises in those cases where a party makes a contract with two or more joint persons, and one of the joint obligors dies. The rule is summarized in 58 Am. Jur., Witnesses, Sec. 336: "The question of the competency of one party to a contract made or a transaction had with two or more joint parties to testify as a witness to the contract or transaction after one such joint party has died seems dependent upon whether the survivor or survivors were present and participated in the transaction or whether it was in fact with the deceased party alone. Where the joint parties were present and participating in the transaction, or the transaction was solely with the survivor, the death of one of them does not bring the case within the statute governing testimony as to transactions with a deceased

person so as to render the opposite party incompetent to testify. But where the transaction is with the decedent alone, the statute applies although another person may be jointly interested with him and jointly bound by his acts." See also 97 C. J. S., Witnesses, Sec. 192.

In brief, where the surviving joint obligor conducted the transaction with the other party to the contract, that is, where both of the contracting parties are living and available to testify, the death of the other joint obligor does not bring the case within the statute. This general rule has been followed in Mississippi. In Faler v. Jordan, 44 Miss. 283 (1870), there was an action on a promissory note against the survivor of a partnership. The plaintiff was competent to testify. The surviving partner might have a claim for contribution against the administrator of the deceased partner's estate. But the court said this would be a claim against the decedent's estate in a "remote sense", and only would "remotely and collaterally" tend to create such liability. *Faler* was cited with approval in Wiggins Turpentine Co. v. Calamity Land Co., 109 Miss. 628, 635, 68 So. 919 (1915); Garner v. Townes, 134 Miss. 791, 802, 100 So. 20 (1924); and Shepard v. Johnson, 201 Miss. 99, 106, 28 So. 2d 661 (1947); see also Coker, Competency of a Defendant to Testify When Sued Under the Wrongful Death Statute, 29 Miss. L. J. 258-263 (1958).

McCutchen v. Rice & Co., 56 Miss. 455 (1879), was a suit against a surviving partner on a partnership contract, which had been made by the survivor with plaintiff during the existence of the firm. It was held that the plaintiff was competent to testify. The contract was actually negotiated with the survivor, and plaintiff could testify "of no fact of which the defendant was not cognizant, and about which he could not offer explanation. The parties would occupy an exact plane of equality." The court noted that the purpose of the statute was to close the door to fraud and perjury. It

was said that "all parties to the transaction are living, and the mischief apprehended from false claims against a decedent cannot exist." The fact that defendant might later have a claim for contribution against his deceased partner would be only an indirect or collateral consequence. It would not disqualify plaintiff as a witness. *McCutchen* was cited with approval in Wiggins Turpentine Co. v. Calamity Land Co., *supra*, 109 Miss. at 635. Combs v. Black, 62 Miss. 831 (1883), apparently represents an extension of the rule. See also Anno., 22 A. L. R. 2d 1068, 1073-1077 (1952); Anno., 54 A. L. R. 2d 1103, 1109 (1957). 97 C. J. S., Witnesses, Sec. 229; Love v. Stone, 56 Miss. 449 (1879).

In summary, the exclusion of Poole's proffered testimony would not promote any purpose intended by the statute. Being an exception to the general rule as to competency of witnesses, it must be strictly construed in favor of competency. Poole and the other contracting party, McCarty, are both living and available to testify. To disqualify Poole as a witness would tend to create an injustice rather than to prevent one. Any claim against the estate of the deceased transferee of McCarty is purely indirect and consequential, not the direct claim contemplated by Sec. 1690. The *Faler* and *McCutchen* cases, denying disqualification where the survivor of joint parties to the contract was the negotiating party, clearly supports this conclusion and our decision that the chancery court erred in sustaining appellees' objection to Poole's testimony. He was not disqualified as a witness under Code Sec. 1690.

Appellee cites and relies upon five cases. Duncan v. Gerdine, 59 Miss. 550 (1882); Weatherbee v. Roots, 72 Miss. 355, 16 So. 902 (1895); McCaughan v. Hardy, 78 Miss. 598, 29 So. 397 (1901); Hutchinson v. Gaston, 128 Miss. 487, 91 So. 193 (1922); Brown v. Parker, 143 Miss. 291, 108 So. 492 (1926). However, all of them are distinguishable from the instant one, where both of the

parties to the contract are living. Among other reasons, in all of the cited cases one of the parties to the contract was dead. The cause is therefore reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

*McGehee, C.J.*, and *Arrington, McElroy* and *Rodgers, JJ.*, concur.