56 449
71 307
56 449
77 614

</div>

G. G. LOVE ET AL. *v.* WILLIAM E. STONE ET AL.

1. WITNESS. *When incompetent against estate of deceased person. Case in
judgment.*
S. was the owner of the legal title to a certain tract of land. The heirs of L.
filed a bill in equity, setting up an equitable claim to the land. L. had
bought it from W., who gave him a warranty deed therefor. W. being dead,
his administrator was made a co-defendant with S. At the hearing, the depo-
sition of S. was offered as evidence of transactions which occurred between
him and W., tending to establish his right to the land against W. and his
vendee, L. The complainants moved to suppress his deposition, on the
ground that it was testimony against the estate of W., a deceased person.
The motion was overruled. *Held,* that the motion was properly overruled.
There being no controversy between S. and the estate of W., the fact that the
estate may, as a result of this contest, be sued on the warranty in W.'s deed
does not render S. incompetent as a witness in this suit. A party can only be
excluded on such ground where he is a witness against the estate of a ·
deceased person in the suit in which he proposes to testify.

2. PRACTICE. *Deposition. Objections, when to be made.*
Where a motion is made to suppress a deposition upon a certain stated ground,
and that only is considered by the lower court, this court will not entertain
any other objection first made here.

3. ESTOPPEL. *When arising from conduct. Case in judgment.*
In 1859, S. bought a half-section of land, and in the same year sold it, by parol,
to W. Without paying for it, W. took possession. In 1863, W. sold one
undivided half-interest in it to L., and in 1865, the other to V. The land was
then divided, L. getting one hundred acres, and V. two hundred and twenty
acres. L. erected valuable and costly improvements on his part, and S. made
no objection, and gave no actual notice of his claim to the land. S. assisted W.
in making the sale to V.; and V. gave a deed of trust on his part of the land
to secure a debt to S., in which the other part was mentioned as belonging to
L. V.'s interest was sold under the deed of trust; S. became the purchaser,
and the trustee executed to him a deed, in which the other part of the half-

56 MISS. — 29

section was mentioned as belonging to L. In 1875, W. died, and soon thereafter L. died. From 1859 to 1876, W. and his vendees were in possession of the land, and paid the taxes on it. Within that time, S. never made any claim to the land, although he and W. and L. resided near together, and were related by marriage. The deed which S. got by his purchase in 1859 was delivered by him to the probate clerk, soon after its reception, to be recorded, but the clerk neglected to record it; and in 1875, after the death of W., S. discovered the neglect, and immediately had it recorded. *Held,* that S. was not estopped by his conduct from claiming against the heirs of L. the one hundred acres bought from W.

APPEAL from the Chancery Court of Panola County.

Hon. J. C. GRAY, Chancellor.

In December, 1859, William E. Stone purchased, at a sale under a decree in chancery, a half-section of land, on a credit of twelve months ; and, to secure the purchase-money, executed a bond, with W. P. Wooten, his brother-in-law, as surety. Before the payment of the purchase-money, Stone sold the land to W. P. Wooten. This sale rested altogether in parol, and no money passed. Wooten took possession of the land, and soon thereafter sold it to his brother, J. L. Wooten, who occupied it for awhile, but surrendered it to his vendor, on learning that the latter had no title. In October, 1862, W. P. Wooten sold the land to one Foster, giving a warranty deed thereto ; and the latter, in the same year, sold it to one Dunn. W. P. Wooten bought it back from Dunn, and in October, 1863, sold an undivided half-interest in the same to Asa Love, his father-in-law, giving him a warranty deed therefor. In November, 1865, Wooten sold his interest to one Vaughan. The land was then partitioned, Love getting one hundred acres, and Vaughan getting two hundred and twenty acres. In November, 1871, Vaughan gave a deed of trust on his part of the land, to secure a debt which he owed to Stone. Vaughan made default ; his land was sold under the deed of trust, and bought by Stone, who then took possession of the same. In November, 1875, W. P. Wooten died, and J. L. Wooten became administrator of his estate. The administrator found amongst the decedent's papers the deed from the commissioner in chancery to Stone. It had not then been

recorded. J. L. Wooten gave the deed to Stone, and he immediately had it recorded. In May, 1876, Stone commenced an action of ejectment against Asa Love, by which he recovered a judgment for the possession of the one hundred acres held by the latter. Love having died soon after the recovery of the judgment in ejectment, his son, G. G. Love, and his daughter, Mrs. W. P. Wooten, filed their bill in chancery, claiming that Stone was estopped to claim the one hundred acres which their father had held, and seeking to prevent the execution of the judgment in ejectment.

The grounds for relief relied upon in the bill are, in, effect, that the purchase-money due by the bond of Stone and Wooten was paid by W. P. Wooten; that Stone permitted W. P. Wooten and Love to expend large sums of money in making improvements on the land, without any assertion, or notice, of his claim, although he resided within a mile of the land, and, owing to their relationship, he and they were in constant intercourse; that Stone advised Foster to buy the land from Wooten, and assisted in negotiating the trade with Vaughan; that Stone knew of the various sales by Wooten and his vendees, and made no objection thereto, nor gave any notice of his claim; that W. P. Wooten and his vendees were in possession of the land from 1859 to 1876, paid the taxes on it during all of that time, and were regarded in the neighborhood as the owners of the land; that, in a conversation concerning the trade with Vaughan, Stone recognized Love's title; and that Stone recognized Love's title in taking the deed of trust from Vaughan, and the deed from the trustee executing said deed of trust, both of which recited Love's title; that Stone never asserted his claim till 1876, after the death of W. P. Wooten. Stone and J. L. Wooten, the administrator of W. P. Wooten's estate, were made defendants to the bill, and both answered.

Stone deposed that the whole of the purchase-money of the land was paid by himself, and not by W. P. Wooten; that the deed was first given to W. P. Wooten, and by him delivered

to the deponent; that he handed it back to Wooten, who was probate clerk, to be recorded, and the deponent supposed it had been recorded, until it was returned to him by J. L. Wooten, the administrator. A motion to suppress Stone's deposition was overruled. The Chancery Court dismissed the bill.

*Miller & Miller*, for the appellants.

1. When the bond of Stone and W. P. Wooten became due, it operated as a judgment against them, and when paid by the latter, the lien and all the rights of the creditor were transferred by law to him. At the time of the sale to W. P. Wooten, the legal title was not in Stone, the commissioner in chancery still having the deed in his possession. *Jelks* v. *Barrett*, 52 Miss. 315.

2. Stone was an incompetent witness against Love's estate. *Witherspoon* v. *Prewett*, 47 Miss. 575. But he was also incompetent to testify against Wooten's estate. If incompetent to testify against Wooten's heirs and distributees, he would be equally incompetent as against his assignees, who will have a right of action against his estate if they lose this suit. *Jacks* v. *Bridewell*, 51 Miss. 881; *Rothschild* v. *Hatch*, 54 Miss. 554.

3. By his conduct with reference to the land in controversy, Stone was estopped to claim it against the heirs of Love. *Nixon* v. *Carco*, 28 Miss. 414; South. L. Rev., Jan. 1877, p. 644.

*Frank Johnston*, on the same side, filed a brief, and cited the following additional authorities upon the question of estoppel: *Wilie* v. *Brooks*, 45 Miss. 549; *Dixon* v. *Green*, 2 Cushm. 612; 6 Cushm. 414; *Green* v. *Biddle*, 8 Wheat. 77; Story's Eq. Jur., sect. 388.

*Taylor & Kyle*, for the appellees.

1. The parol sale by Stone to Wooten was absolutely void, and could not be validated by any acts of the parties. *Beaman* v. *Buck*, 9 Smed. & M. 207; *Payson* v. *West*, Walk. 515; *Box* v. *Stanford*, 13 Smed. & M. 93; *Bacon* v. *Cottrell*, 4 Geo. 269; 42 Miss. 724.

2. An estoppel *in pais* can only exist where the party invoking the doctrine has been misled, to his prejudice, by the wilful misrepresentations, or fraudulent concealments, of the party claimed to be estopped. Big. on Fraud, 438 ; Big. on Estop. 480 ; *Hepburn* v. *McDowell*, 17 Serg. & R. 383 ; *Ferris* v. *Cooper*, 10 Cal. 502 ; *Casey* v. *Inloes*, 1 Gilm. 430 ; *Lawrence* v. *Brown*, 1 Seld. 394 ; *Hill* v. *Epley*, 7 Casey, 331 ; *Goodson* v. *Beacham*, 24 Ga. 150 ; *Parker* v. *Parker*, 2 Metc. 421. There is no allegation or proof that Love was influenced in his purchase by Stone. Such allegation and proof thereof were both necessary to establish an estoppel. 38 Cal. 300 ; 18 Ohio St. 38 ; 31 Ind. 76 ; 64 N. C. 83.

*T. C. Catchings*, on the same side.

1. The objection that Stone was an incompetent witness against Love's estate, not having been made in the court below, will not be considered by this court.

2. As to the objection that Stone was incompetent to testify against Wooten's estate, the answer is, that Wooten's estate is in no manner connected with this suit, and can only by indirection be interested in it.

3. On the question of estoppel, the following authorities are conclusive : *Sulphine* v. *Dunbar*, 55 Miss. 255 ; *Staton* v. *Bryant*, 55 Miss. 261 ; *Davis* v. *Bowmar*, 55 Miss. 671.

Campbell, J., delivered the opinion of the court.

The motion to suppress the deposition of Stone, because he testified to support his own claim against the estate of Wooten, a deceased person, was properly overruled. Although Stone testified to dealings between himself and Wooten, he did not testify to support any claim or right of himself against the estate of such deceased person, nor was he a party to litigation with that estate. It is true that Wooten's administrator is a co-defendant with Stone in the bill exhibited against them, but there is no controversy between them, and no right of Wooten is involved in this suit, as between the complainants and Stone.

That Wooten's estate may be affected prejudicially in consequence of the result of this suit in Stone's favor, and a future action against Wooten's estate, does not render Stone incompetent as a witness in the present suit. To exclude a party as a witness to prove his own claim or right, it must be against the estate of a deceased person in the suit in which he proposes to testify. The death of one of the parties to a transaction seals the lips of the survivor as a witness only when that survivor is offered as a witness to testify of such transaction in a suit in which the estate of the deceased person is involved. In a suit involving Wooten's estate, to which Stone was a party, he would be incompetent as a witness; but, as already stated, this suit does not embrace Wooten's estate, and Stone was not incompetent on the ground on which the motion to suppress his deposition was made and decided in the court below.

It is urged here that Stone was incompetent as a witness because this suit is to establish the right of Asa Love, deceased, as against Stone, in favor of complainants, who are heirs of Love. We decline to entertain this objection, because the record shows that, in the Chancery Court, the only objection made to Stone's deposition, or considered by the court, was his incompetency as against Wooten's estate.

The testimony of Stone destroys the equity of the bill, which rests upon the averment of the payment by Wooten, the surety on the bond of Stone, to Fort, commissioner, of the purchase-money of the land. Stone testified that *he* paid the money, and that Wooten did not.

The only other question is, whether Stone was estopped by his acts in reference to the land from asserting his legal title to it.

Applying the principles announced in the cases of *Sulphine* v. *Dunbar* and *Staton* v. *Bryant*, 55 Miss. 255 and 261, we answer this question in the negative.

Decree affirmed.