MOTLEY v. STATE.

(Division B. Jan. 13, 1936.)

[165 So. 296. No. 31917.]

570

W. M. **Everett** and **B. F. Coursey,** both of Decatur, for appellant.

**Wm. H. Maynard,** Assistant Attorney-General, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Howell Motley, was indicted for the murder of his father, Lee Motley, at the August, 1934, term of the circuit court of Newton county; placed on trial at the March, 1935, term of the court on said indictment; convicted of murder; and sentenced to serve a life term in the state penitentiary, from which judgment this appeal is prosecuted.

The deceased was killed with a shotgun at the home of his son, who lived near him.

According to the appellant and his wife, the deceased came to their home, made a demand for money alleged by him to be due to him by his son, and they had a conversation in which the son offered to pay some money and to give some corn, although he claimed not to owe the debt, but said he would do so to save trouble. The relation between the father and son had been strained due to the

fact that some time prior to the killing the father was arrested and taken to the insane hospital at Meridian, and the sheriff and his deputy being unable to overpower him, solicited the aid of the appellant, and because of this the deceased cursed his son, calling him a vile epithet, and said he would kill him if it was the last thing he did. This testimony was ruled out by the court below, apparently on the ground that it was too remote from the cause.

The appellant tendered two physicians, the present and past superintendents of the East Mississippi Insane Hospital, to prove that Lee Motley was insane, and the character of his insanity as shown by the records of that institution. Dr. Welch, the present superintendent, was not at the institution when Lee Motley was there, and had not made any examination of him, but he was the custodian of the records there, and was offered to prove the records, which was ruled out by the court. Dr. Hoye, the past superintendent, was then offered to show that the records were made under his superintendency, and to show that they were properly made, and what they contained. In the absence of the jury he was examined and stated that Lee Motley was afflicted with paranoia, and that his form of insanity rendered persons dangerous, and that when a person was so afflicted he could not get an idea once entertained out of his mind.

It was shown by the testimony of the appellant that after his father returned from the insane hospital he went over to see him, and that his father directed his attention to the bullet holes made in the walls by the sheriff's pistol when he shot the deceased in arresting him, and his father grew very angry, and the appellant left, and that some little time before the killing the appellant was passing his father's house when he called him, and they had some words, and he asked his father to quit calling him to stop when he was passing, and his father said it was a public road and he would stop him when he damned

please. The appellant offered his mother, the wife of the deceased, to prove by her that his father, Lee Motley, had stated to her, and she had communicated to the son, Howell Motley, that if he did not pay his father the sum claimed the father would kill him, which statement was, by the court, ruled out as being a privileged communication.

The appellant also, as stated, introduced his wife, who testified that on the occasion she was at the deceased's house, he made some threat against her husband that, unless he paid him some money the deceased claimed was due him, the deceased would kill her husband.

There were two witnesses, tenants on the farm of the deceased, who testified for the state that they saw the deceased going to the home of his son on the day of the killing, and he stated he was going there to collect some money that was due the deceased, and he gave them some directions about work they were to do; that when the deceased reached his son's house, they had some apparent conversation near the steps which they could not hear; that the deceased started toward the house and the appellant went into the house and procured a gun, and while the deceased was approaching his son's house with hands up and nothing in them, the gun was fired when the deceased was some distance from the house.

The appellant testified, and was supported by his wife, who testified to the same effect, that his father came to the house and they had some conversation about an alleged debt which the appellant claimed he did not owe his father, but offered to pay some money and to give his father some corn to settle the claim, not being able to pay the full amount in money; that the deceased said he would go into the house and get his son's gun and kill him and his wife and baby; that he (the appellant) went into his house and procured his gun, and as his father was approaching him, the appellant warned him to stop, which the father refused to do; and that appellant fired to pre-

vent his father going into the house. The appellant also stated that his father was a very strong man physically, having, as he expressed it, the strength of two men, and was a more powerful man than the son, who offered to prove what happened at the time the sheriff and deputy arrested his father, but was not permitted to do so. Counsel asked him if he had ever seen his father, Lee Motley, engage in any physical contest, and that was ruled out upon the theory that it would inject into the trial the transaction at the time of the arrest.

We are of the opinion that the court below erred in excluding the testimony as to what occurred at the time of Lee Motley's arrest when he was to be committed to the insane hospital, and in ruling out the testimony of Drs. Welch and Hoye so far as the records of the insane hospital were concerned, and as to their expert testimony as to the nature and character of the mental disease with which Lee Motley was afflicted. Insofar as these physicians were concerned, it does not appear that either of them conducted a personal examination of, or had any personal communication with, the deceased while he was in the institution.

By article 4, chapter 108, Code 1930 (section 4568 et seq.), the East Mississippi Insane Hospital at Meridian was created, and its board of trustees are thereby required to visit it in January and July of each year, and at each visitation carefully examine the hospital register containing the diagnosis of the case of each patient made by the superintendent or under his direction when the patient was admitted. They are also required to call upon the superintendent as to information about each patient, as to sex, age, and the county from which patient came. It is also provided in said article that every lunatic residing in this state, who shall not have been brought into this state insane within five years, shall be admitted into the hospital free of charge. By section 1536, Code 1930, communications made to a physician by

a patient under his charge are held to be privileged. Is this section applicable to patients in insane hospitals, where the law itself requires a record to be made and kept, and requires an examination to be made of every patient as to his physical condition and the nature of his mania? We are of the opinion that the privileged communication statute does not apply to cases where the law itself requires a disclosure of the condition of the patients. It could not be the purpose of the law to seal within the mind of a physician knowledge he acquired, and at the same time call for an inspection of patients and a record to be kept of same. As to whether or not the knowledge obtained by Drs. Welch and Hoye, if they had made a personal examination of Lee Motley, would have been a privileged communication, we do not here decide, but reserve a ruling thereon until a proper case is presented. Their testimony offered in the case at bar was from the records kept in the hospital, and such records are admissible in evidence, since the law required that such records be kept, and such legal records are available in proper proceedings where the mental condition of a patient is involved or in issue. These doctors did not, as stated, make a personal examination, and physicians are not incompetent as experts, and may testify as experts to any matter not learned from an examination of a patient, or from communications between physician and patient. Estes v. McGehee, 133 Miss. 174, 97 So. 530; Dabbs v. Richardson, 137 Miss. 789, 102 So. 769; and other authorities.

It was therefore error for the court to exclude the testimony of these physicians as to the matters covered in the above statement.

We think the evidence as to what occurred at the time of the arrest of Lee Motley was admissible in connection with subsequent evidence as to the happenings after his release from the insane hospital. This case is differentiated from the ordinary case because of the mental

condition of the deceased as shown by medical testimony, that ideas once entertained by the deceased would not be changed as would ideas entertained by an ordinary person by reason of other circumstances tending to remove the impression formed. It is manifest from the testimony that the deceased deeply resented what he conceived to be a great injury done him by his son, and his mental attitude toward his son had not changed from that period up to the time of death. If this testimony as to the deceased's mental condition is true, and the jury should have been allowed to pass upon whether or not it was true, it is apparent that the deceased's attitude of hostility toward his son had not changed. In the case of Lee v. State, 160 Miss. 618, 134 So. 185, it was held that facts tending to show a continuous course of conduct prior to the killing, and threats made, although not immediately connected with the killing, were admissible in evidence, for the purpose of shedding light upon the transaction.

The evidence of appellant's mother, the wife of the deceased, was properly excluded. It is not permissible for conversations between husband and wife in the domestic relation out of the hearing of others to be produced in evidence. This is a public policy of law respecting evidence as to the sacredness of domestic relations. But if the mother of appellant, in fact, made the statement to the appellant as to his father's attitude, and this statement was believed by the appellant and influenced his actions, he would be permitted to testify as to what was communicated to him, but he could not introduce his mother as a witness.

It is assigned as error the giving of the following instruction: "The court instructs the jury for the state that murder is the wilful and felonious killing of a human being with malice aforethought; and if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Howell Motley, in Newton county, Missis-

sippi, about the time testified about, so killed the deceased, Lee Motley, then the defendant is guilty of murder and you should so find and return by your verdict." It is complained that this instruction is erroneous because it leaves out the phrase "without authority of law." This element should be embraced in the instruction.

The following instruction is assigned as error: "The court instructs the jury for the defendant, Howell Motley, that even though the jury may believe that the defendant killed the deceased, that it is the sworn duty of the jury to presume that he was justified in so doing, and this presumption alone will warrant an acquittal of the defendant in this case, unless the state has proven by competent and trustworthy testimony that the defendant did unlawfully, feloniously, and of his malice aforethought, kill and murder deceased." We do not think the refusing of this instruction constitutes reversible error. The deceased was killed with a deadly weapon.

It is complained that the court erred in refusing an instruction telling the jury that homicide is justifiable when committed in resisting an unlawful attempt of one to force his way into defendant's home, and when committed in the lawful defense of one's own person, or the defense of another human being. The defendant procured an instruction defining his right to defend his wife and home from danger, and there is no error committed by refusing this instruction.

It is also complained that the court erred in granting an instruction telling the jury that the law tolerates no excuse and accepts no justification for the taking of human life upon a plea of self defense, unless necessary to save the slayer's life. Under the facts in this case, it would be error to omit telling the jury of the right to defend one's home and family, as well as himself, from a threatened attack; but we find no reversible error in the granting of this instruction, because of other instructions.

We find no other reversible error than those named; but for the reasons mentioned, this case must be reversed, and the cause remanded for a new trial in accordance with this opinion.

Reversed and remanded.