SECURITY MUT. LIFE INS. CO. *v.* BRUNSON.

(Division A. Nov. 30, 1936.)

[170 So. 824. No. 32429.]

H. **Talbot Odom**, of Greenwood, for appellant.

S. C. Mims, Jr., of Grenada, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee, W. E. Brunson, filed his bill in the chancery court of Grenada county against the appellant, Security Mutual Life Insurance Company, alleging, in substance, that the insurer had executed a policy of in-

surance on appellee's life on the 23d of September, 1911, for the face amount of two thousand dollars, the premiums thereon being fifty-six dollars and fifty-nine cents to be paid each year for twenty years, whereupon appellee was entitled to certain settlements, among others, a cash surrender value of approximately one thousand dollars. The bill further alleged that all the premiums on the policy had been paid for the twenty-year period; that Sam J. Brunson was named beneficiary therein; that appellee was entitled to approximately one thousand dollars as the cash surrender value; that appellee did not have the policy; and that the insurer should be required to produce it in court and make discovery as to the actual value of the same. The prayer of the bill was for the recovery of the cash surrender value of the policy, according to the contract.

Appellant filed a motion suggesting a nonjoinder of parties, alleging that the estate of Sam J. Brunson was a proper party defendant; that Sam J. Brunson had died since the policy became paid up, and that there was an administration of his estate; that in the lifetime of Sam J. Brunson the appellee had made an absolute, unconditional gift of the policy to him; that Sam J. Brunson paid the premiums thereon for fifteen years; and that during his lifetime he, as claimed by W. E. Brunson, without the knowledge and consent of the complainant, obtained from the insurance company at various times loans on said policy, amounting in the aggregate to the cash surrender value thereof

The court below overruled the motion to require the appellee to make the estate, or the heirs, of Sam J. Brunson parties to the bill; whereupon the insurance company filed its answer, in which it admitted the execution of the policy, that the premiums had been paid for twenty years, the death of Sam J. Brunson; and averred the absolute, unconditional gift of the policy by the in-

sured to Sam J. Brunson in his lifetime, and the making of the loans thereon with the knowledge and consent of the insured. As part of the answer, the motion for nonjoinder was renewed as a plea. The court, having heard the evidence, entered a decree in favor of the insured, W. E. Brunson, against the insurance company for the sum of nine hundred twenty-four dollars and twenty-nine cents.

1. On the assignment of error that the heirs, or estate, of Sam J. Brunson were necessary parties to the suit, we are of opinion that the court did not err in overruling the motion or in declining to sustain the plea to the same effect. There was no contention on the part of W. E. Brunson, the appellee, that his brother, Sam J. Brunson, owed him anything, nor did he seek any kind of decree against him, and it is evident from the language of the original bill that this is a straight suit for the recovery of the cash surrender value of the policy issued on his life. It might have been advantageous to the insurance company if the Sam J. Brunson estate, or his heirs, had been brought in by the appellee to answer the bill—that advantage being to recover from the estate by way of cross-bill the amount collected from the insurance company as loans on the policy by signing the name of W. E. Brunson on the checks issued by the company for such loans, and by signing W. E. Brunson's name to the applications for the loans, in the event a recovery was had by W. E. Brunson against the insurance company. There is nothing in the pleadings to show that there was a common right or interest in the subject matter of this litigation between Sam J. Brunson and W. E. Brunson, and there is nothing to show that the court here could not proceed to final decree and decide the case as between the litigants before it and do them justice. The interest of a party must be considered as to quality and nature, and new parties will not be brought into a suit at the instance of the defend-

ant therein for the sake of the defendant's convenience, or in order that he may file a cross-bill against said new parties. Lemmon v. Dunn, 61 Miss. 210; Coulson v. Harris, 43 Miss. 728; McPike v. Wells, 54 Miss. 136.

2. It is the main contention of the appellant that the court below erred in holding that the insured had not made an absolute, unconditional gift of the insurance policy to his brother, Sam J. Brunson, on or after the time the name of the beneficiary was changed to Sam J. Brunson. This policy was issued on the life of W. E. Brunson in 1911, payable to his mother, Louisa Brunson. In January, 1916, the policy was evidently delivered by W. E. Brunson to Sam J. Brunson; the latter made application to the insurer for a change of beneficiary, and in that application requested that he be made the beneficiary. The proof is undisputed that Sam J. Brunson signed the name of W. E. Brunson for said change in beneficiary. It is also undisputed that W. E. Brunson agreed that the change of beneficiary should be thus made, but he denied signing the application. The change was made by the insurer on its books on January 18, 1916, and thereafter, until the policy was fully paid up in 1931, the beneficiary paid all the premiums, applying thereto for the most part the cash dividends paid by the insurer on the policy.

W. E. Brunson testified that he had no knowledge of the applications for, or the payments to Sam J. Brunson of, the several loans unquestionably made on the policy by the insurer. The evidence is undisputed that Sam J. Brunson in his lifetime had checks for these various loans sent to him addressed and payable to W. E. Brunson, and that he indorsed W. E. Brunson's name thereon together with his own indorsement. One application for a loan was acknowledged before a justice of the peace. W. E. Brunson denied that he had ever been before the justice of the peace and denied his sig-

nature. There was other testimony that the signature thereon was not that of W. E. Brunson.

The appellee further testified that he delivered the policy of insurance some time in 1916 to his brother, Sam J. Brunson, and his testimony is as follows:

"Q. Now, what happened to that policy? A. Well, I paid the premiums on 'em four or five years, and my brother taken it up.

"The Court: Your brother did what? A. Was payin' it after that.

"Q. I know, but what did you say 'taken it over'? A. Taken this over, yes sir.

"Q. Under what condition did he take the policy? Were you married at that time? A. No, sir.

"Q. Were you able to pay the premiums? A. No, sir.

"Q. And you turned the policy over to him for him to pay the premiums on the policy. A. Yes, sir."

He further testified, with reference to the gift:

"Q. It was your understanding when you turned the policy over to him that he was to pay the premiums. A. Yes, sir.

"Q. What consideration did he get out of it? A. He had the protection of the policy.

"Q. He was going to get the two thousand dollars if you died before he did. A. Yes, sir.

"Q. And that was all he was going to get out of it. A. He had the protection for these twenty years, you see.

"Q. That's all he had. He was to pay the premiums and get nothing else. A. Yes, sir."

The witness denied any knowledge of the loans secured by his brother on the policy, and denied his signature to any of the checks issued by the company payable to W. E. Brunson, or that he had made any inquiry relative thereto. He denied that he had any conversation after the death of his brother with Chambley,

the administrator of his brother's estate, in which he told him that the policy belonged to his brother Sam, and for that reason he was willing to make it over to Annie May Brunson, the daughter of Sam, or to his estate, and denied that he had given the policy to his brother.

It is not disputed that Sam J. Brunson in 1916 attended to having the beneficiary changed in the policy. In that application, which appeared to have been signed by W. E. Brunson, there is this language, after appointing Sam Brunson as beneficiary: "In the event of death of said beneficiary—before my death, then and in that case the proceeds thereof shall be payable to my executors, administrators or assigns."

Chambley testified that, after the death of Sam Brunson, W. E. Brunson admitted to him that the policy belonged absolutely to the deceased, Sam J. Brunson, and agreed to change the beneficiary so as to make the estate of Sam J. Brunson the beneficiary, and the witness secured blanks for that purpose, whereupon W. E. Brunson declined to execute the change of beneficiary application.

The justice of the peace who took the acknowledgment to one of the applications for a loan declined to identify W. E. Brunson as the party who came before him.

We think this statement of the evidence is sufficient to show that there was a sharp conflict therein. The chancellor found the facts in favor of W. E. Brunson, the insured. According to the application for change in beneficiary in 1916, when both brothers had very recently decided to make the change and did make the contract, it is a significant circumstance that the provision in that application was that, in case Sam J. Brunson died before W. E. Brunson, then the proceeds of the policy of life insurance were to be paid to the heirs and legal representatives of W. E. Brunson. It is also

significant that Sam obtained the loans of the policy from the insurer in the name of W. E. Brunson.

We are not unmindful of the fact that delivery of the chose in action, the insurance policy, by W. E. Brunson to Sam J. Brunson is prima facie evidence of a gift thereof, but the explanation of W. E. Brunson as to the purpose of the delivery is not unreasonable or unbelievable. We are therefore of the opinion that the chancellor was warranted in his finding, and that the overwhelming weight of the evidence is not with the insurer. We are relieved from the necessity, in view of the facts of this case, of deciding whether or not a written contract of life insurance may be made the subject of absolute gift by an oral contract and manual delivery, or under what terms and conditions such an oral contract can be made, if at all.

There is no reason here for the application of the doctrine of estoppel. According to the finding of the chancellor, Sam J. Brunson imposed upon the insurance company by signing W. E. Brunson's name to applications for loans, and indorsed his name on the several checks issued therefor without any authority so to do. As we see it, under the oral contract, testified to by W. E. Brunson, he was not called upon to do or say anything relative to the insurance policy until after the death of his brother in September, 1934, when the title thereto was again vested in him for the benefit of his estate. Within a very short time after the death of his brother, he began to make inquiry of the insurance company and demanded payment of the cash surrender value. The evidence of W. E. Brunson as to his signature on checks and applications, being that of his brother and without his authority, while affecting the interest of his brother's estate, was not establishing a claim against that estate, which was not a party to the suit nor necessarily a party. The evidence was against the insurance company on its only real defense—a gift of the policy by

W. E. Brunson to Sam J. Brunson in the lifetime of the latter. Love v. Stone, 56 Miss. 449. No right of Sam J. Brunson is involved in this suit. That his estate may be affected prejudicially in consequence of the result of this suit in W. E. Brunson's favor, and a future action by the insurance company against that estate, does not render W. E. Brunson incompetent as a witness in the present suit. ''To exclude a party as a witness to prove his own claim or right, it must be against the estate of a deceased person in the suit in which he proposes to testify.'' The case of Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051, is not in point here and the difference is clear. In that case the sole heir at law of a testator was his widow. The will devised all of his property to his sisters. The widow, as his only heir at law, contested his will on the ground that the husband was mentally incapacitated to execute a will. Her testimony disclosing the intimate relations between husband and wife tended materially to establish insanity of the husband and destroy the will. That accomplished, she took the property, depleted her husband's estate, and established her claim thereto in violation of the statute.

Affirmed.