# Reynolds *v.* West, et al.

No. 41293 November 23, 1959 115 So. 2d 742

614

*Berger, Callon & Zuccaro, Joseph E. Brown, Jr.,* Natchez, for appellants.

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellee, Walter Washington.

*Laub, Adams, Forman & Truly,* Natchez, for appellees, David L. Trask and George F. West.

HALL, J.

This suit was brought by Clarence Reynolds, a minor, suing by Josephine Reynolds, his mother and next friend, against George F. West doing business as West Funeral Home, David L. Trask, the driver of an ambulance for said home, and Walter Washington, the owner and driver of an automobile which had a collision with the ambulance, for damages alleged to have been sustained by the said Clarence Reynolds about one week before his birth when his mother was allegedly injured in a collision between the ambulance in which she was riding and the automobile of Walter Washington.

There was a sharp conflict in the testimony as to whether or not Walter Washington was guilty of any negligence and as to whether or not George F. West and his employee David L. Trask were guilty of any negligence. There was also a conflict in the testimony as to whether Josephine Reynolds was injured in the collision

and as to whether Clarence Reynolds sustained any injury. The jury returned a verdict in favor of all the defendants and the plaintiff appeals.

The first contention made and argued by the plaintiff is that the lower court erred in allowing the defendants to consolidate their challenges to the jury and to confer with each other in exercising their peremptory challenges. In this connection the plaintiff says in his brief that West and Trask exercised four challenges and that Washington exercised four challenges, and plaintiff's counsel states that this is his recollection of the matter, but counsel for Washington states that only four challenges were used and exercised by all of the defendants combined. We have very carefully searched the record and it does not show at any place how many challenges were used, and if the appellant desired to make a point on this issue he should have developed it in the record.

Appellant next contends that the lower court erred in admitting testimony from and concerning the records of the plaintiff and his mother at Natchez Charity Hospital. In this connection appellant relies on the privileged communication statute. The records were admitted in evidence and testimony was given with reference thereto by doctors who had never seen or examined the minor plaintiff or his mother. Section 6976 of the Recompiled Code of 1942 provides that the records in charity hospitals shall be reported not less often than semi-annually to the board of directors of the institution, with a full and detailed report of each patient treated or admitted for care or treatment, a diagnosis of the patient, and such other matters as the board may request.

In the case of Motley v. State, 174 Miss. 568, 575, 576, 165 So. 296, the Court had before it a similar section with reference to patients in insane hospitals and the Court there said: ''By section 1536, Code 1930, communications made to a physician by a patient under his charge are

held to be privileged. Is this section applicable to patients in insane hospitals, where the law itself requires a record to be made and kept, and requires an examination to be made of every patient as to his physical condition and the nature of his mania? We are of the opinion that the privileged communication statute does not apply to cases where the law itself requires a disclosure of the condition of the patients. It could not be the purpose of the law to seal within the mind of a physician knowledge he acquired, and at the same time call for an inspection of patients and a record to be kept of same. As to whether or not the knowledge obtained by Drs. Welch and Hoye, if they had made a personal examination of Lee Motley, would have been a privileged communication, we do not here decide, but reserve a ruling thereon until a proper case is presented. Their testimony offered in the case at bar was from the records kept in the hospital, and such records are admissible in evidence, since the law required that such records be kept, and such legal records are available in proper proceedings where the mental condition of a patient is involved or in issue. These doctors did not, as stated, make a personal examination, and physicians are not incompetent as experts, and may testify as experts to any matter not learned from an examination of a patient, or from communications between physician and patient.''

 We are of the opinion that no error was committed in the admission of the hospital records nor as to the admission of expert testimony based upon such records and not upon an examination of the patient.

Appellant next contends that the verdict for all of the defendants is against the overwhelming weight of the evidence and that in the same connection and for the same reasons the lower court committed error in denying his motion for a new trial. The plaintiff's medical testimony was largely that of Dr. Glenn Gibson of Baton Rouge, who is a specialist in pediatrics. He said that

in his opinion the minor plaintiff is mentally retarded due to a brain injury and that the accident contributed thereto; that the injury is permanent and plaintiff will not develop normally or ever be able to learn to take care of himself. On cross-examination he said that damage to the child is more likely when the mother has convulsions and that convulsions may produce a fatal injury or impair mental development, and that the brain damage which he found is sometimes called cerebral palsy.

For the defendants Dr. G. M. Little, Superintendent of the Natchez Charity Hospital, testified that he was not superintendent at the time Josephine Reynolds was a patient there, and that he had never treated her, but that he had her hospital records from the time of her admission on July 8, 1957, with convulsions at about 9:00 o'clock in the morning and that these records show that she continued to have convulsions with high blood pressure, fluctuating from 230 over 140 on down to a much lower figure during the course of her treatment, and that about five days later the premature child was delivered unassisted while she was in bed; and his conclusion was that in his opinion the patient was suffering from eclampsia. He said that eclampsia can be followed by anoxia, which is lack of oxygen, and cause premature delivery and that the most obvious effect would probably be brain damage. He also said there was nothing in the record to show that the doctors present were informed of the wreck.

Dr. J. C. Coffee qualified as a pediatrician and testified that he never saw a case of cerebral palsy that could be attributed to any external violence to the mother.

Dr. J. J. Bennett, a specialist in obstetrics and gynecology, testified that eclampsia is the end result of toxemia of pregnancy, and that when the mother has high blood pressure and develops convulsions it becomes named eclampsia as soon as the convulsions are evident, and that that gives considerable risk to the mother and the

620

baby, so much so that the mortality rate for the baby jumps from one or two percent to twenty or thirty percent. He further testified that eclampsia is one of the most common causes of cerebral palsy though he admitted that it is quite possible that trauma might have something to do with it.

From this and other testimony in the record we are unable to say that the verdict of the jury is against the overwhelming weight of the evidence or that there was error in denying the motion for a new trial based on that ground.

For the reasons given the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.