222 So.2d 841 (1969)
CITY OF BAY ST. LOUIS
v.
Huey P. JOHNSTON.
No. 45197.
Supreme Court of Mississippi.
April 14, 1969.
Rehearing Denied June 2, 1969.
*842 Bryan & Gordon, Harry R. Allen, Pascagoula & Gulfport, for appellant.
Gex, Gex & Phillips, Bay St. Louis, Walter J. Gex, III, Satterfield, Shell, Williams & Buford, Jackson, for appellee.
ROBERTSON, Justice.
Appellee, Huey Johnston, was injured in a car-truck collision on Central Avenue in Bay St. Louis, Mississippi, on the morning of February 8, 1965. He recovered a judgment for $20,000 against appellant, the City of Bay St. Louis, in the Circuit Court of Hancock County.
Johnston, a car salesman, was driving the car of a customer, Delbert McArthur, in a northerly direction on Central Avenue. A city dump truck was being driven by Ola Moran in a southerly direction on Central Avenue. As the car and truck approached each other, the dump truck turned to the left and crossed appellee's lane of traffic in an attempt to enter a road leading to the garbage dump. The right front of appellee's car struck the truck just behind the right front fender. Johnston sustained injuries to his face about the left eye, right thumb and neck. The neural arch of the second cervical vertebra was fractured. He has continued to suffer from his neck swelling, nervous tension and headaches. At times he must quit work, leave his customer, and go home because of nervous tension.
There were nine assignments of error. We will discuss briefly the following three assignments:
(1) The lower court erred in overruling the objection of appellant to testimony of appellee as a violation of Section 1690 Mississippi Code 1942 Annotated (1956), the Dead Man's statute.
(2) The lower court erred in overruling the objection of appellant to hospital records pertaining to treatment of appellee, including written reports by a doctor who did not testify, on the grounds that admission of such records was a violation of the hearsay rule, thereby depriving appellant of the right of cross-examination of this doctor and others who made written entries into said records.
(3) The lower court erred in refusing appellant's requested instructions permitting the jury to draw reasonable inferences of unfavorable effect from the failure of appellee to present Dr. Kenneth Meyer and other doctors from Oschner's Clinic as witnesses.
*843 The appellant contends that the liability vel non of the City, as employer, was derived solely from the actions of its employee, the truck driver, now deceased (his death was not related to the accident), and that inasmuch as the City would have a claim against his estate for indemnity that this suit is, in effect, an action against his estate and that, therefore, the appellee was not competent to testify under Section 1690 Mississippi Code 1942 Annotated (1956).
That section provides:
"A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. * * *"
The estate of the deceased truck driver was not a party to this suit; the City of Bay St. Louis was the only defendant. This Court has held many times that Section 1690 is applicable only to direct claims against the estate of a deceased, and not to indirect or consequential claims. This rule was recently applied in the case of Poole v. McCarty, 240 Miss. 341, 127 So.2d 398 (1961).
In Poole, the Court discussed the competency of a plaintiff to testify against a defendant, whose partner, active in the particular transaction and contract involved, had since died, and his estate had not been made a party to the suit.
We said:
"The fact that defendant might later have a claim for contribution against his deceased partner would be only an indirect or collateral consequence. It would not disqualify plaintiff as a witness. * * *" Id. at 350, 127 So.2d at 402.
In Poole, the Court quoted with approval from Shepherd v. Johnston, 201 Miss. 99, 106, 28 So.2d 661, 663 (1947):
"`Section 1690, Code 1942, prohibiting a person from testifying as a witness to establish his own claim against the estate of a deceased person, created an exception to the general rule as to the competency of a witness; and being an exception, it must be strictly construed in favor of the competency of the witness. The exception must come within both the letter and spirit of the statute. * * *'" 240 Miss. at 346, 127 So.2d at 400.
This rule was applied in Security Mutual Life Insurance Company v. Brunson, 176 Miss. 893, 170 So. 824 (1936), wherein we said:
"The evidence was against the insurance company on its only real defense  a gift of the policy by W.E. Brunson to Sam J. Brunson in the lifetime of the latter. * * * No right of Sam J. Brunson is involved in this suit. That his estate may be affected prejudicially in consequence of the result of this suit in W.E. Brunson's favor, and a future action by the insurance company against that estate, does not render W.E. Brunson incompetent as a witness in the present suit. `To exclude a party as a witness to prove his own claim or right, it must be against the estate of a deceased person in the suit in which he proposes to testify.' [Love v. Stone, 56 Miss. 449 (1879).]" 176 Miss. at 903-904, 170 So. at 827.
Appellee's testimony was competent inasmuch as the estate of the deceased driver was not a party to this suit and appellee was not testifying to establish a claim against the estate of the deceased.
Appellant also contends that hospital records introduced into evidence at the trial were inadmissible because they were hearsay.
*844 Appellee answers that hospital records were made an exception to the hearsay rule by statute in Mississippi. Since 1962, Mississippi has required hospitals to keep records:
"All hospitals, their officers or employees and medical and nursing personnel practicing therein, shall with reasonable promptness prepare, make and maintain true and accurate hospital records complying with such methods and minimum standards as may be prescribed from time to time by rules and regulations adopted by the licensing agency." Miss.Code 1942 Ann. § 7146-52 (Supp. 1966).
6 Wigmore, Evidence (3rd ed. 1940) § 1707, p. 36, has this to say about the admission into evidence of hospital records:
"The medical records of patients at a hospital, organized on the usual modern plan, deserve to be placed under the present principle. They should be admissible, either on identification of the original by the keeper, or on offer of a certified or sworn copy. There is a Necessity (ante, § 1421); the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trust-worthiness (ante § 1422); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. * * *"
Hospital records of the Natchez Charity Hospital were admitted in evidence in Reynolds v. West, 237 Miss. 613, 115 So.2d 742 (1959). This Court approved the action of the trial court, saying in its opinion: "Such records are admissible in evidence, since the law required that such records be kept, * * *."
The hospital records were properly admitted into evidence in this case.
The appellant contends: The lower court erred in refusing appellant's requested instructions permitting the jury to draw reasonable inferences of unfavorable effect from the failure of appellee to present Dr. Kenneth Meyer and other doctors from Oschner's Clinic as witnesses.
This case was set for trial on January 9, 1968. On January 4, 1968, appellant received a letter confirming an earlier conversation in which appellee waived the privilege with reference to questioning Dr. Kenneth Meyer of Oschner's Clinic, New Orleans, Louisiana. Appellant made no motion for a continuance or for a reasonable delay; neither did appellant file interrogatories.
Section 1703 Mississippi Code 1942 Annotated (1956) says in part: "The deposition of any witness absent from or residing out of the state may be taken by any party to the cause, * * *." (Emphasis added.) After receiving the waiver, the appellant had the same right as the appellee to take the deposition of Dr. Meyer. No inference can be drawn from the appellee's failure to produce in person as a witness every out-of-state doctor who examined him. If the appellant felt that Dr. Meyer's testimony was important, he had an opportunity to present this matter to the trial court in the form of a motion for a continuance or by filing interrogatories. Since appellant did neither, it cannot now complain.
While the judgment is liberal, we are not prepared to say that the jury was actuated by bias, passion and prejudice. There was evidence that the appellee had been permanently injured, or that the swelling of the neck with consequent pain and *845 tension might recur from time to time into the indefinite future. The judgment of the trail court is affirmed.
Affirmed.
ETHRIDGE, C.J., GILLESPIE, P.J., and JONES and PATTERSON, JJ., concur.

ON PETITION FOR REHEARING
JONES, Justice.
The only issue presented and argued is that the hospital records were not admissible.
It is stated that there was no foundation for the admission of the records and no proof of the rules and regulations of the hospital commission as mentioned in Section 7146-52 of our Code quoted in the opinion. When the plaintiff tendered the record in evidence, the attorney for appellant made the following statement:
I am stipulating that the custodian need not be here to say these are the records kept in the normal course of the hospital record keeping, but I do object to these records on the basis they are hearsay. * * *
By this statement there was a waiver of all objections except that the records constituted hearsay.
Appellant appears to present the issue that such records are not admissible except under the "Uniform Business Records as Evidence Act", which has not been adopted in this State. This act was not formulated until 1927. 30 Am.Jur.2d Evidence § 930 (1967).
In Volume 75 (page 378) and Volume 120 (page 1124) of American Law Reports Annotated are annotations headed, "Admissibility of hospital chart or other hospital record." There seems to be a conflict of authority on the admissibility of the records. However, as these annotations will show, there are cases cited from numerous states and some federal courts sustaining the admissibility as an exception to the hearsay rule, which is replete with exceptions. 29 Am.Jur.2d Evidence § 496 (1967). The annotator says that in many cases such records were held admissible as to all matters proper for inclusion. Again it is stated by the annotator:
Where hospitals are required by statute to keep records of the cases under their care, such records are admissible under the exception to the hearsay rule applying to public documents.
It is stated that in a number of cases, the record appears to have been admitted because it was kept in the regular course of business. The exception to the hearsay rule (in addition to the reasons quoted from Wigmore in the original opinion), is based upon the presumption that a person charged with a particular duty has performed it properly, and that a man charged with such a duty usually has no motive to suppress or distort the truth.
In New York, the record of an autopsy report, not open to public inspection, was held admissible in a manslaughter case and was held not to violate constitutional provisions. People v. Nisonoff, 293 N.Y. 597, 59 N.E.2d 420 (1944); certiorari denied, 326 U.S. 745, 66 S.Ct. 22, 90 L.Ed. 445 (1945). This case may be under the Uniform Business Records Act, but many of the cases cited in the annotations mentioned, precede the formulation of such act by many years, some going back to 1899 and 1901.
Mississippi has heretofore charted its course. In Metropolitan Life Insurance Company v. McSwain, 149 Miss. 455, 115 So. 555 (1928), at a time when there was no statute requiring such records to be kept, they were held inadmissible, one of the reasons being that they constituted hearsay.
Our Code of 1930, dealing with eleemosynary institutions, contained a statute which *846 became section 6976 of Mississippi Code of 1942 annotated. There it was required that the superintendent of each eleemosynary institution should make reports, giving a full and detailed statement of each patient treated or admitted, a diagnosis of the patient, and such other matters that the board might request, and by section 4568 et seq., Code of 1930, the board of trustees of a hospital for the insane was required to visit the hospital twice each year and carefully examine the register containing a diagnosis of each patient, and was required to call upon the superintendent for information about each patient.
In Motley v. State, 174 Miss. 568, 165 So. 296 (1936), the records of the hospital for the insane were held to be admissible, since the law required they be kept.
In Reynolds v. West, 237 Miss. 613, 115 So.2d 742 (1959), the records of a charity hospital were offered by the defendant, admitted in evidence, and were held to be admitted properly.
In 1962 the Legislature adopted chapter 411 of its General Laws, which appears in the 1968 cumulative supplement under the title "Hospital Commission", beginning with Mississippi Code of 1942 Annotated section 7146-51. The title of this first section is headed, "Uniform standards for preparing, maintaining and retiring hospital records  definitions." It is interesting to note that the said chapter contained a preamble reciting, among other things:
WHEREAS, hospital records are the property of the various hospitals, but furnish valuable sources of scientific, clinical and legal information to patients, their personal representatives or heirs, authorized nominees and medical personnel, as well as the hospitals owning the same; * * *
* * * * * *
WHEREAS, it would be to the advantage of the public and the hospitals of this state to establish uniform standards for preparing, making, maintaining and retiring hospital records * * *.
Under the first section, "Definitions", hospital records are defined:
"Hospital records" shall mean, without restriction, those medical histories, records, reports, summaries, diagnoses, and prognoses, records of treatment and medication ordered and given, notes, entries, X-rays, and other written or graphic data prepared, kept, made or maintained in hospitals that pertain to hospital confinements or hospital services rendered to patients admitted to hospitals or receiving emergency room or out-patient care. * * *
It should be particularly noted that the records shall contain summaries, diagnoses and prognoses, and other written or graphic data, prepared, kept, and maintained, that pertain to hospital confinements or services rendered to patients.
The next section provides: (7146-52)
All hospitals, their officers or employees and medical and nursing personnel practicing therein, shall with reasonable promptness prepare, make and maintain true and accurate hospital records complying with such methods and minimum standards as may be prescribed from time to time by rules and regulations adopted by the licensing agency.
Section 7146-53 reads:
Hospital records are and shall remain the property of the various hospitals, subject however to reasonable access to the information contained therein upon good cause shown by the patient, his personal representatives or heirs, his attending medical personnel and his duly authorized nominees and upon payment of any reasonable charges for such service.
*847 Section 7146-59 preserves the privilege existing between doctors and patients. It reads:
Except as otherwise provided by law, hospital records shall not constitute public records, and nothing contained herein shall be deemed to impair any privilege of confidence conferred by law on patients, their personal representatives or heirs, by Section 1697, Mississippi Code of 1942, Recompiled, or laws amendatory thereof, or otherwise.
It is argued that Dr. Odom, whose statements constitute a part of the hospital record, was not shown to be a resident physician or surgeon. The statute does not require that the record be kept by a resident physician or surgeon. All that is necessary is that the physicians and nurses who contribute to the making of records be practicing in the hospital.
Insofar as parts of the record constituting an opinion, we call attention to the case of Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (1956). This case was under the Uniform Business Records Act, and the court there held, as shown by syllabus 12, as follows:
The hearsay objection being obviated by the Uniform Business Records Act, a proper expert medical opinion contained in a hospital record is accorded dignity equal to that of a similar opinion from the witness stand.
The statute adopted in 1962 provides that the hospital records shall consist, without restrictions, of medical histories, records, reports, summaries, diagnoses and prognoses, records of treatment and medication ordered and given, notes, entries, x-rays, and other written or graphic data prepared, kept, made, or maintained, pertaining to hospital confinements or services rendered to patients. Diagnoses and prognoses are opinions and conclusions to be made a part of the record, and the statute does not omit from its provisions any data prepared, kept, or maintained in the hospital.
We think the findings and conclusions, particularly with reference to diagnoses and prognoses, would constitute a part of the hospital record, and this Court having held that the record, which the law requires to be kept shall be admissible, the law makes all the data, which the Legislature says constitutes the record, admissible.
In People v. Nisonoff, supra, the autopsy report was claimed not to be a public record because the city charter said that it "shall not be open to public inspection." It was argued that a condition precedent to admissibility was that the record be available to inspection by the public. That court said that this was too narrow a construction, citing 5 Wigmore, Evidence (3rd ed. 1940) § 1630, et seq. The autopsy findings were contained in a report in a public office, made by a public officer, for a public purpose, and embodied facts required by statute to be contained therein. The Court said that was sufficient, although, in the public interest, they were available only to public officials.
5 Wigmore, Evidence (3rd ed. 1940) § 1630 says that limiting the scope of the exception to public documents is inadequate and misleading. The word "public" is ambiguous. It may signify "open to all," "capable of being known or observed by all"; or it may signify "made or done by an officer of the government"; or it may signify "having an interest for persons in general." He suggests that the word "official" more accurately signifies the essence of the principle dominating the exception.
Black's Law Dictionary 1393 (4th ed. 1957) in defining the word "public" says:
* * * In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contradistinguishes *848 them from a few. Accordingly, it has been defined or employed as meaning the inhabitants of a particular place; all the inhabitants of a particular place; the people of the neighborhood. * * * Also, a part of the inhabitants of a community. * * *
In the same book, page 568, "public document" is defined as:
A state paper, or other instrument of public importance or interest, issued or published by authority of congress or a state legislature. Also any document or record, evidencing or connected with the public business or the administration of public affairs, preserved in or issued by any department of the government. * * *
As to whether hospital records constitute a public document, it is necessary to consider the 1962 act. The preamble says that such records furnish valuable sources of scientific, clinical, and legal information to patients, * * * medical personnel, and the hospitals owning the same. Also, that it would be to the advantage to the public and the hospitals to furnish a uniform standard for such reports. While section 7146-59 states that, except as provided by law, such records shall not constitute public records from the reading of the act and the preamble, we think that the Legislature meant that the record would not be open to the general public, where anyone, through idle curiosity, or personal desire of his own, would be able to open and read. The record was the property of the hospital, but was available to the patient and his attending medical personnel and nominees, and, being designed to furnish sources of scientific and clinical information, to medical personnel as well as to the hospital. The records were, of course, subject to discussion at the hospital medical staff meetings, and available to other medical personnel, if any, present at said meetings, or with the patient's permission. The information furnished by them could be of great benefit to the medical profession, the hospital, and through them, to the public generally. As stated in the preamble, they would be of advantage to the public in the preservation of health, and possibly the prevention of diseases.
And last, the preamble under which the Legislature adopted said act provided that hospital records "* * * furnish valuable sources of * * * legal information to patients. * * *"
The record in this case was offered by the patient; there was no violation of the physician-patient privilege. The petition for rehearing is overruled.
Petition for rehearing overruled.
All Justices concur.